THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL A. CONAWAY, Defendant-Appellant.

Third District No. 80-414

Opinion filed October 22, 1981.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Daniel A. Conaway, appeals from the order of the Circuit Court of Tazewell County sentencing him, after he had pleaded guilty to two counts of the unlawful delivery of a controlled substance, to two concurrent terms of imprisonment, one of three years and the second of two years. The only issue here raised concerns the sentences imposed and whether the trial court erred by refusing to consider the milder sentence imposed on another person, one Carey Garlock. While Garlock also pleaded guilty to the delivery of controlled substances and his convictions arose from the same ongoing undercover investigation as that which brought to light the defendant's criminal activity, Garlock and the defendant were not co-defendants charged with the same act of delivery and, therefore, the sentence imposed on Garlock was properly ruled to be irrelevant in this case.

The factual basis for the defendant's guilty pleas differs from that which served as the basis for Garlock's pleas. Charges against both arose from the undercover investigation of Peoria County Deputy Sheriff Michael White, then a Multi-County Enforcement Group (MEG) officer.

In the case against the defendant, it was established that on the

evening of December 5, 1978, White drove to the Conaway residence in Delavan, Illinois, after having arranged by telephone to meet the defendant. When White arrived, he was advised by the defendant's wife that he would have to wait a half hour. When the defendant returned, he called a number in Pekin, Illinois, and determined that the cocaine was in. They then drove to Pekin to Steak'N'Shake where White gave the defendant a portion of the purchase amount ($25) and the defendant then disappeared. When the defendant returned to the car, he and White drove back to Delavan. After arriving at his home, the defendant placed the substance he had obtained in Pekin on a set of scales. The defendant asked for White's plastic laminated driver's license, took out a portion of the substance and showed Agent White that the scale still indicated that a little bit over a gram of cocaine was left. He then received another $85 from White and handed approximately a gram of cocaine to White. That substance was properly cared for by White and transmitted to the Illinois Bureau of Scientific Services for analysis. Mrs. Susan Jones at the Morton Laboratory found that it contained 1.2 grams of a substance containing cocaine.

Six days later White again returned to the Conaway residence, this time for the purposes of purchasing mescaline. On this occasion, he arrived at approximately 4:30 in the afternoon on the 11th of December, and the defendant, the defendant's wife and Agent White all drove to the Pekin Steak'N'Shake. On this occasion, the defendant left the vehicle in the Steak'N'Shake parking lot and returned with the substance, which he then handed to White at 3205 Court Street in Pekin. That delivery was of a purported 3 grams of mescaline. The substance was properly handled by White and subsequently analyzed by Paul Titus of the Maywood Crime Lab, who determined that it contained 2.2 grams of lysergic acid diethylamide.

The factual basis for Garlock's guilty pleas follow. On the 19th day of December, 1978, at 3219½ Court Street in Pekin, Illinois, special agent White contacted Garlock for the purpose of buying drugs. The location is right next door to the Pekin Steak'N'Shake. The contact was made without the use or presence of an informant, but contact was made after getting the identification of Garlock from another person from another city, Delavan. Garlock and White discussed the purchase of cocaine, and Garlock agreed to sell a quarter ounce of cocaine for $475. The $475 was paid, and a white powdery substance was handed to Agent White. That substance was properly cared for until it was analyzed by a forensic scientist, Susan Hart Johns, who found the substance to be cocaine in the amount of 8.2 grams.

Regarding the second transaction between Garlock and White, which occurred on February 20, 1979, Agent White, with support from the

Illinois Law Enforcement Department, Law Enforcement Division of Investigation, returned to the Pekin address for the purpose of buying drugs. Through some telephone calls before the actual meeting, it had been arranged that White would buy a half ounce of cocaine, and the agreed price was $950. When White got to the Garlock residence, there was some problem about the weight being a little bit short of one-half ounce, and Garlock indicated he did not want to sell a short quantity, so another quarter ounce sale was made. Again, the price was $475. The white powdery substance delivered February 20 was properly cared for and taken to Pekin Laboratory and analyzed by Susan Hart Johns, who found the substance to be cocaine in the amount of 9.1 grams.

The transactions which form the basis for the defendant's convictions are totally separate and distinct from the transactions between White and Garlock. They are not co-perpetrators of the same act who pleaded guilty separately, as was the case in *People v. Steg* (1966), 69 Ill. App. 2d 188, 215 N.E.2d 854. Although fundamental fairness requires that defendants, who are in similar situations should not receive grossly disparate sentences (*People v. Holman* (1976), 43 Ill. App. 3d 56, 356 N.E.2d 1115), the defendant has cited to us no case in which this principle has been applied in a non-co-perpetrator situation. Initially, we note that persons who commit crimes independently are seldom, if ever, similarly situated. Furthermore, it would be a futile act to require a sentencing court to consider the sentences previously imposed on other defendants who were convicted of a particular type of crime—in this case, the unlawful delivery of a controlled substance. Although this defendant asks only for the consideration of the sentence imposed on one other person, to require the admissibility of one unrelated sentence would open the door for defendants seeking admission of all unrelated sentences, or at least those which would support an argument for a lesser sentence. Finally, consideration must be given to the differing records of defendants, the needed discretion in State's Attorneys and the strength or lack thereof of proposed prosecutions.

Accordingly, the trial court properly considered Garlock's sentence to be irrelevant to the imposition of sentences on this defendant, and therefore, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

. SCOTT, P. J., and STOUDER, J., concur.