THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DELILAH GONZALEZ, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3052

Opinion filed May 26, 1993.

Rita A. Fry, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Stephen Ferrucci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant Delilah Gonzalez was convicted of first-degree murder and sentenced to a 40-year term of imprisonment. On appeal, she argues that the prosecutor's closing argument denied her right to a fair trial. In addition, defendant asserts that the sentence was excessive.

The evidence presented at trial revealed that Anthony Bruno was fatally stabbed in the chest on a Chicago Transit Authority bus around 5 p.m. on September 18, 1988. Sandra Borges testified that she was a passenger on that bus at the time of the incident. She recalled that three people boarded the bus at Fullerton and Austin. Borges testified that she thought all three individuals were males. They moved to the back of the bus, speaking Spanish and some English. When the victim, Anthony Bruno, entered the bus, one of the three individuals stated that they were Cobras and Bruno was a Gaylord, a rival gang. Bruno sat across from Borges.

One of the three individuals then walked to the front of the bus, one stood near the rear exit door and one stood next to the victim. The two people in the rear of the bus looked at each other and then one stabbed the victim while the other held the rear door open. The three individuals fled. Borges testified that she did not get a good look at them. Further, she never heard anyone state that he or she wanted to stab someone.

Timothy Kimbler was a passenger on the bus with his girl friend, Sherry Burris. Kimbler and Burris sat near the back of the bus. Three Hispanics boarded the bus at Austin Avenue and walked to the rear of the bus. Defendant, who Kimbler thought was male, began fondling a five-inch brown knife which was closed. Burris then moved one seat forward and defendant changed seats. One of defendant's companions wrote graffiti on the windows of the bus with white shoe polish. In addition, defendant motioned toward the victim and said, "Gaylord." Defendant then handed the knife to one of her companions and the other companion walked to the front of the bus. As the bus slowed, the individual who had written the graffiti opened the knife. Defend-

ant stood at the rear door of the bus. When the bus stopped, defendant's companion stabbed the victim in the chest and then ran to the rear door, which defendant was holding open.

Kimbler subsequently traveled to the police station. He identified defendant's companion who wielded the knife and defendant in separate lineups. At that time, Kimbler learned that defendant was female.

Sherry Burris corroborated Kimbler's testimony concerning the events surrounding the murder. She further testified that the stabber wrote "STM" on the window, and the defendant stated, "I'll hold the door open." Burris also identified defendant and her companion in lineups.

Alana Freeman, the bus operator, testified that she was driving the bus on Fullerton Avenue. As she approached the intersection of Fullerton and Kildare, one individual walked to the front of the bus while his companions remained in the rear. One of them signalled for a stop. Freeman stopped the bus and, after a few seconds, looked in her rearview mirror to determine why the rear door remained open. She saw one of them holding the door open.

After the three individuals exited the bus, Freeman was informed that someone had been stabbed. She requested assistance and then held the victim, who died in her arms. Freeman further testified that she noted white graffiti on a rear window of the bus which had not been there when she started her shift.

Detective Phillip Boyle of the Chicago police department testified that he was assigned to investigate the murder of Anthony Bruno. Based upon information received by police officers, Boyle traveled to 3017 Keating Avenue in Chicago, where he recovered the murder weapon from an individual named Moratay.

Chicago police officer Michael Mason testified that he directed other officers to locate Julio Morejon, who was subsequently transported to police headquarters. Morejon admitted that he stabbed the victim.

Detective Hugh Conwell testified that he arrested defendant on September 21, 1988. Defendant was transported to Area 5 headquarters and advised of her constitutional rights. Defendant related that she was riding on the Fullerton Avenue bus with William Moratay and Morejon when she saw an individual she recognized as a Gaylord gang member. She told Morejon that the individual was a Gaylord and handed her knife to Morejon. She knew that Morejon would stab the victim. Defendant walked to the rear exit, held the door open after the bus stopped, and exited with Morejon after he stabbed Bruno.

Detective Renaldo Guevara testified as an expert in gang crime. This testimony revealed that about 70% of gang murders result in retaliation. This retaliation is characterized by murdering a rival gang member on the one-year anniversary of the initial killing.

Assistant State's Attorney Mary Beth Kinnerk met defendant around 2 p.m. on September 21, 1988, at police headquarters. After defendant stated that she understood her rights and would give a statement, defendant indicated that no threats or promises were made to induce her statement and that she was making a statement of her own free will.

Defendant's court-reported statement was read into evidence. Defendant related that she, Morejon and Moratay got on a Fullerton bus at Austin Avenue. Morejon was a member of the Imperial Gangsters. Defendant identified herself as a tagger, a person who writes graffiti on buses. Defendant recognized the victim as a member of the Gaylords' street gang. According to defendant, she had previously seen the victim arguing with one of Morejon's friends about gang matters. Defendant told Morejon about the previous argument. Morejon then told defendant to give him her knife and further told her to hold the rear door open. Morejon knew that defendant had a knife because she had used it to scrape graffiti on the bus window. Defendant also knew that Morejon intended to stab the victim, and she complied with his instructions, holding the door open so that Morejon could make his getaway.

This statement further revealed that defendant's brother, a member of the Spanish Cobras' gang, was murdered on September 17, 1987. Defendant thought that he was killed by a member of the Gaylords' gang because blonde hair was found on his clothes, and the Gaylords are white. Defendant kept those hairs on her dresser at home.

Defendant now asserts that the closing argument presented by the prosecutor served to deny her a fair trial. Defendant identifies the prosecutor's request that the jurors compare the rights accorded defendant against the lack of fairness accorded the victim.

The relevant colloquy occurred:

"[Assistant State's Attorney]: Throughout these proceedings, in fact, from the time that the police first went to Delilah Gonzalez' house to place her under arrest until the time she was brought to the police station until this day as we stand in this courtroom, the defendant has been accorded total fairness.

[Defense Counsel]: Objection, your Honor. That is for the jury to decide.

THE COURT: Total—what was the last word?

[Assistant State's Attorney]: Fairness, Judge.

THE COURT: That's for the jury to decide, counsel, proceed.

[Assistant State's Attorney]: When the defendant was arrested, the police who went there offered her mother a ride to the police station. They brought the defendant to a police station, put her in an interview room and took the handcuffs off. She was advised of her rights. She was told that she didn't have to talk to the detectives if she didn't want to, that she could see a lawyer if she wanted to, that she could stop questioning at any time. And then she was interviewed.

And then an Assistant State's Attorney came and told her all of the same things, all of her Constitutional rights. And the same thing again in front of a court reporter, she was told of her rights, told she didn't have to say these things, told that she could do what she wanted. While they are waiting for the court reporter, food is provided for the defendant. She stated she was hungry, and the State's Attorney provides her with food.

Throughout the entire time at the police station I would submit to you nothing untoward was done towards this defendant. There is no inference, absolutely not a shred of evidence in this trial that this statement is anything other than the voluntary statement of Delilah Gonzalez.

And when the defendant comes here, ladies and gentlemen, and in accordance with the rights that she has, she has a public trial, she is provided with competent defense counsel, an impartial judge—

[Defense Counsel]: Objection, Judge.

THE COURT: Overruled.

[Assistant State's Attorney]: —and a jury of her peers. All these things, ladies and gentlemen, the fairness that she has been accorded, was not accorded to Anthony Bruno. When Anthony Bruno was on that bus that day—

[Defense Counsel]: Objection, your Honor.

THE COURT: Overruled.

[Assistant State's Attorney]: When Anthony Bruno was on that bus that day, ladies and gentlemen, he was tried in the court of Julio Morejon and Delilah Gonzalez, and he was not treated fairly. He didn't get a chance to see his accusers.

[Defense Counsel]: Objection.

THE COURT: Objection noted. Overruled.

[Assistant State's Attorney]: He never saw his accusers. He never knew what it was that he was suspected of doing wrong. He was never told what it was that he was accused of. His trial lasted the 10 or 15 seconds it took that bus to slow down while the defendant stood at the door waiting to hold the door for Julio Morejon, while Julio Morejon stood next to Bruno shaking his hand getting up the nerve to commit this first degree murder.

The fairness that was denied Anthony Bruno we are asking on behalf of the People of the State of Illinois today, we are asking for a fair and just verdict. And the only verdict I would submit to you that you can conclude based upon the evidence in this case, we are asking you to find the defendant, Delilah Gonzalez, guilty of the first degree murder of Anthony Bruno because she is guilty. Just as sure as she is sitting here today, ladies and gentlemen, she is guilty of the murder of Anthony Bruno. We are asking you to so find."

■ A prosecutor is permitted wide latitude in the presentation of argument to the jury. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 527 N.E.2d 448.) However, the Illinois Supreme Court "has condemned prosecutorial references to the rights of the victim or the victim's family which tend to distract jurors from their consideration of the evidence of defendant's guilt." (*People v. Smith* (1992), 152 Ill. 2d 229, 267, 604 N.E.2d 858.) Based upon *Smith*, we determine that the prosecutor's comparison of the constitutional protections afforded the defendant and the violated rights of the victim constituted error.

However, our inquiry does not end at this point. If evidence of a defendant's guilt was substantial and the fairness of the trial was not compromised, reversal is not required. (*People v. Smith*, 152 Ill. 2d at 269.) Thus, the arguments must be assessed within the context of the trial in its entirety. (*People v. Tate* (1970), 45 Ill. 2d 540, 259 N.E.2d 791.) The evidence presented in the instant case was not closely balanced and was clearly sufficient to support a guilty verdict in the absence of the prosecutor's improper argument.

The evidence in this case revealed that defendant identified the victim as a Gaylord gang member to her companion. Defendant fondled the knife before she handed the weapon to Morejon, who stabbed the victim. Defendant admitted that she knew Morejon was going to stab the victim when she gave him the knife, and that she held the rear door of the bus ajar thus assisting in the killer's escape. Her statement further revealed that defendant thought that her brother

was killed by a Gaylords' gang member on September 17, 1987, a year and a day before the murder at issue. In light of the evidence demonstrating defendant's guilt, we cannot say that the prosecutor's arguments were significantly prejudicial to constitute a material factor in the jury's verdict. Thus, the error was harmless.

■ Defendant further asserts that the imposed sentence violated the constitutional requirements of proportionality and rehabilitation. Defendant was convicted of first-degree murder with an applicable sentencing range of 20 to 60 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) Although the imposition of the 40-year sentence was within the trial court's statutory authority, the sentence may be reduced pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) if its imposition constitutes an abuse of the trial court's discretion. *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 559 N.E.2d 948.

Defendant specifically argues that her sentence is disproportionate when compared to the sentences imposed on other youthful defendants convicted of murder and other murder convictions characterized by similar or more aggravating factors. As noted in *People v. Conaway* (1981), 101 Ill. App. 3d 202, 204, 427 N.E.2d 1302, individuals who commit separate crimes are "seldom, if ever, similarly situated," and thus, defendant's proportionality arguments cannot succeed.

In the instant case, the circumstances surrounding the instant offense and the mitigating and aggravating factors were before the trial court. In imposing sentence, the trial court noted that defendant was the instigator and that she used the stabber as her tool for vengeance. The trial court further noted that the stabber was sentenced to 40 years and defendant was at least equally responsible. Further, the court specifically found that defendant was proved to be a significant danger to others and that her actions exhibited callousness. The trial court considered numerous factors in imposing the sentence, and we find that defendant has not demonstrated that the imposed sentence constituted an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.