(No. 86154.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAY HARRY FERN, Appellant.

*Opinion filed November 18, 1999.—Rehearing denied January 31, 2000.*

Gary Senner, Sanford M. Pastroff, Steven L. Merouse and Steven A. Weinreich, of Sonnenschein, Nath & Rosenthal, and Elissa L. Isaacs, of Rudnick & Wolfe, all of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and

Gary W. Pack, State's Attorney, of Woodstock (Joel D. Bertocchi, Solicitor General, and William L. Browers and Jay Paul Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

The issue in this appeal is whether the propriety of a criminal sentence may be judged by comparing it to the sentences imposed on defendants in other cases. We hold that the excessiveness of a sentence may not be determined from a consideration of the sentences imposed on defendants in separate, unrelated cases.

## FACTS

Defendant, Jay Harry Fern, was charged in the circuit court of McHenry County with the unlawful delivery of 250 grams of cocaine. Ill. Rev. Stat. 1987, ch. 56 1/2, par. 1401(a)(2). This offense carried a sentencing range of 9 to 40 years' imprisonment. Ill. Rev. Stat. 1987, ch. 56 1/2, par. 1401(a)(2)(B). Defendant entered an open plea of guilty and was sentenced to 25 years' imprisonment.

Defendant thereafter filed a motion to reconsider his sentence pursuant to Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)). Defendant argued that his 25-year sentence was excessive because it failed to account for his rehabilitative potential. In this regard, defendant noted his long marriage, his three children, and his consistent employment history. Defendant also pointed out that he had only one prior conviction, and that he had accepted responsibility for his actions by pleading guilty.

Defendant also argued that his sentence was excessive when compared to the sentences imposed on defendants in other cases for the same or more serious drug offenses. Defendant included a chart of Illinois decisions in which a person convicted of the same or a more serious drug crime was given a sentence shorter than that

given to defendant in this case. Based on this comparative information, defendant argued that his sentence was excessive and "should be reduced to bring it in line with sentences for comparable offenses."

The State moved to strike the portion of defendant's motion that asserted his "comparative sentencing" analysis. The State asserted that such an analysis was not a valid basis for judging the propriety of a sentence. The circuit court granted the State's motion to strike. The circuit court subsequently denied defendant's motion to reconsider his sentence.

The appellate court affirmed the circuit court. The appellate court rejected defendant's comparative sentencing analysis. The court reaffirmed its previous decisions declining to use a comparative sentencing analysis in evaluating the propriety of a sentence. The court noted, however, that appellate court decisions from other districts had used sentencing information from similar cases to determine whether the trial court imposed an excessive sentence. No. 2—97—0917 (unpublished order under Supreme Court Rule 23).

We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315. We now affirm the appellate court.

## ANALYSIS

Defendant contends that the circuit court erred in striking his comparative sentencing argument. He asserts that courts, if presented with comparative sentencing information, must consider it and act on it where the information reveals "an unexplainable and gross disparity." Defendant asks this court to reduce his sentence on the ground that it is "inexplicably and grossly disparate and excessive when compared to sentences imposed on numerous similarly-situated defendants." The issue we must decide, therefore, is whether the excessiveness of a sentence may be determined from a consideration of the sentences imposed on defendants in separate, unrelated

cases. We now hold that such information is not a proper basis for judging the excessiveness of a sentence.

A brief review of our state's sentencing structure is necessary. The legislature sets forth by statute the range of permissible sentences for each class of criminal offense. The statutory sentencing scheme is intended to advance four purposes: (1) to prescribe sanctions proportionate to the seriousness of the offense and permit the recognition of differences in rehabilitation possibilities among individual offenders; (2) to forbid and prevent the commission of offenses; (3) to prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and (4) to restore offenders to useful citizenship. 730 ILCS 5/1—1—2 (West 1998).

Although the legislature has prescribed the permissible ranges of sentences, great discretion still resides in the trial judge in each case to fashion an appropriate sentence within the statutory limits. *People v. Wilson*, 143 Ill. 2d 236, 250 (1991); *People v. James*, 118 Ill. 2d 214, 228 (1987). The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the "cold" record. *Streit*, 142 Ill. 2d at 18-19; *Perruquet*, 68 Ill. 2d at 154.

In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently.

*Streit*, 142 Ill. 2d at 19; *James*, 118 Ill. 2d at 228. A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Cabrera*, 116 Ill. 2d 474, 493-94 (1987).

Defendant contends that the excessiveness of a sentence may properly be judged by comparing it to the sentences imposed on similarly situated defendants in other cases. He asserts that a sentence cannot be permitted to stand when it is grossly disparate in comparison to the sentences imposed on such similarly situated defendants. Defendant states, however, that he does not seek a requirement that courts independently conduct comparative sentencing analyses. Rather, defendant contends that courts must conduct such an analysis if the parties provide comparative sentencing information. The State, on the other hand, argues that allowing the type of comparative sentencing analysis urged by defendant would interfere with the intended operation and purpose of sentencing.

This court has not directly addressed this issue. Several districts of our appellate court have considered the question, with differing results. Decisions out of the Fourth and Second Districts have refused to apply a comparative sentencing analysis in considering the excessiveness of a sentence. See *People v. Thornton*, 286 Ill. App. 3d 624, 636 (1997) (refusing to compare the defendant's sentence to that imposed in a separate case); *People v. Bien*, 277 Ill. App. 3d 744, 753-55 (1996) (same); *People v. Lintz*, 245 Ill. App. 3d 658, 669 (1993) (same); *People v. Terneus*, 239 Ill. App. 3d 669, 675-78 (1992) (same); *People v. Welsh*, 99 Ill. App. 3d 470, 471 (1981) (affirming trial court's refusal to consider comparative sentencing information in imposing sentence); *People v. Brown*, 103 Ill. App. 3d 306, 309 (1982). The Third

District of the Appellate Court has reached seemingly contrary conclusions on this issue. Compare *People v. Conaway*, 101 Ill. App. 3d 202, 204 (1981) (affirming a trial court's refusal, in sentencing the defendant, to consider the milder sentence imposed on another person), with *People v. Martin*, 58 Ill. App. 3d 915 (1978) (although acknowledging that each case must be judged on its own peculiar facts, reviewing the cases cited by the defendants and finding that the defendants' sentences were "comparable to those received by defendants in other cases"). The First District applied a comparative sentencing analysis in reviewing the excessiveness of a sentence in *People v. Harris*, 187 Ill. App. 3d 832 (1989); see also *People v. Norfleet*, 259 Ill. App. 3d 381, 396 (1994) (finding that defendant's sentence "greatly exceeded" those imposed in other cases); *People v. Neither*, 230 Ill. App. 3d 546, 551 (1992) (comparing defendant's sentence to that imposed in other cases and finding it excessive).

We agree with those decisions rejecting cross-case comparative sentencing as a basis for challenging a sentence. We find that such an analysis does not comport with our sentencing scheme's goal of individualized sentencing and would unduly interfere with the sentencing discretion vested in our trial courts.

As noted above, the range of sentences permissible for a particular offense is set by statute. Within that statutory range, the trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The sentencing judge is to consider "all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding." *People v. Barrow*, 133 Ill. 2d 226, 281 (1989). In reviewing a claim that a sentence within statutory

limits is excessive, the court must consider whether, given the particular facts of the case, the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. See *People v. Cabrera*, 116 Ill. 2d 474, 493-94 (1987). The fact that a lesser sentence was imposed in another case has no bearing on whether the sentence in the case at hand is excessive *on the facts of that case*. As the appellate court in *People v. Welsh*, 99 Ill. App. 3d 470, 471 (1981), explained, under our sentencing system:

"[S]entencing becomes an individualized proceeding but is sufficiently structured to prevent the prejudices of an individual judge from overcoming an evenhanded neutral approach. [Citation.] Like fingerprints or snowflakes, each one bears some similarities to the others, but no two are exactly alike. It therefore follows that sentencing is not an exact science and cannot be reduced to a mathematical formula. It further follows that one sentence is no precedent for another."

See also *People v. Lintz*, 245 Ill. App. 3d 658, 669 (1993) (declining to compare the defendant's sentence to that imposed in another case "because the proper penalty must be based on the particular circumstances of the individual case").

The propriety of the sentence imposed in a particular case cannot properly be judged by the sentence imposed in another, unrelated case. Simply because a lesser sentence was imposed in another case does not lead to the conclusion that the more severe sentence imposed in the case at hand is excessive. " '[N]o indication has been shown of a legislative intent to lessen disparity of sentences by equating all sentences to those that would be imposed by the most lenient trial courts or approved by the most lenient courts of review.' " *People v. Terneus*, 239 Ill. App. 3d 669, 676-77 (1992), quoting *People v. Cox*, 77 Ill. App. 3d 59, 77 (1979) (Green, J., dissenting). Allowing a sentence to be attacked, and potentially reduced, because the sentence imposed in another case is

less severe would allow a trial judge to effectively reduce the permissible range of sentences for a particular offense below that set by statute. Other judges sentencing persons convicted of that crime would be required to follow suit or have a justifiable reason for not doing so. Defendant responds to this concern by arguing that a prior lenient sentence will not always lead to a reduction of the sentence at bar, because the sentencing court could find a reason to distinguish the facts of the prior case. Under defendant's argument, however, this would be appropriate only if there was a reason justifying the disparity between the two sentences. Absent such a reason, the prior lenient sentence would control the later case.

In addition, use of defendant's comparative sentencing analysis runs the risk of erroneous conclusions. No two cases are ever truly "the same." *Terneus*, 239 Ill. App. 3d at 677. In seeking to compare a defendant's sentence to that imposed in another case, a court will necessarily be limited in the information it will possess about that other case. Defendant here suggests that comparisons may be made using merely the reviewing court opinions in other cases. The reviewing court opinion, however, will rarely, if ever, contain a recitation of *all* the facts and circumstances that were considered in fashioning the defendant's sentence. A review of the actual record in each of the other cases would be necessary. Even assuming such records could be obtained, and it were feasible for the court reviewing the sentence to read such records, a truly accurate comparison of the cases still could not be made as there are factors which will not be apparent from simply reading the record. "The written words of the record rarely if ever fully capture the intricacies that work into the sentencing court's judgment, including but not limited to that court's direct observations of the defendant's demeanor, as well as the victim's pain and ability to cope." *Terneus*,

239 Ill. App. 3d at 677. Thus, given the limited nature of the information obtainable about a "comparable" case, the defendant in that case may appear to be similarly situated to the defendant in the case at hand when, in fact, some factor exists which solidly differentiates the two. Use of a comparative sentencing analysis to reduce a sentence may, in such an instance, disrupt sentencing parity, not achieve it.

Moreover, comparing a defendant's sentence with the sentences imposed in other cases runs the risk of arriving at an erroneous conclusion due to a skewed sample. The sample of other sentences with which a court would be presented in the form of appellate court opinions could not include *all* similarly situated cases. Even assuming that all comparable cases reported in published decisions could be located and presented, the sample would not include those cases resolved in unpublished orders pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23), nor would it include those cases in which the defendant decided not to appeal. See *Bien*, 277 Ill. App. 3d at 754; *Terneus*, 239 Ill. App. 3d at 677.

It is true, as defendant points out, that Illinois courts have held that fundamental fairness requires that similarly situated defendants not receive grossly disparate sentences. See, *e.g.*, *People v. Cooper*, 239 Ill. App. 3d 336, 363 (1992); *People v. Owens*, 151 Ill. App. 3d 1043, 1048-49 (1987). That principle has been applied, however, only in the context of codefendants involved in the same crime. See *Cooper*, 239 Ill. App. 3d at 363; *Owens*, 151 Ill. App. 3d at 1049; see also *People v. Thornton*, 286 Ill. App. 3d 624, 636 (1997) (noting that this principle does not apply to defendants in unrelated cases). Defendant asserts that there is no principled reason for not applying this rule beyond the codefendant situation to compare the sentences imposed in separate, unrelated cases. We disagree. Persons who commit crimes independently are

" 'seldom, if ever, similarly situated.' " *People v. Palmer*, 162 Ill. 2d 465, 491 (1994), quoting *People v. Conaway*, 101 Ill. App. 3d 202, 204 (1981). Moreover, comparing the sentences of codefendants is an entirely different exercise than comparing sentences imposed in separate cases. In the codefendant situation, the persons whose sentences are being compared were involved in the same crime and there is, therefore, a single set of facts. Further, in the codefendant situation, the pool of sentences to be compared is, by definition, limited. Extending that principle to compare the sentences imposed in unrelated cases, on the other hand, opens up the process to a potentially vast pool of comparables.

Defendant also asserts that rejection of the comparative sentencing approach is at odds with explicit legislative policy. Defendant argues that, in 1977, the legislature enacted legislation substantially revising the Unified Code of Corrections in order to ensure that similar offenders receive similar sentences for the same crime. Defendant points to comments in the legislative history of the 1977 legislation which indicate that "excessively disparate and inequitable sentences" were a serious problem under the then-existing sentencing system. Defendant also highlights two sections of the Code of Corrections, enacted as part of the 1977 legislation, which he contends clearly express uniformity and parity in sentencing as the public policy of this state. Section 5—5—4.2 of the Code of Corrections, cited by defendant, is entitled "Statewide Sentence Equalization Procedures" and provides that "[t]he Supreme Court may by rule, not inconsistent with law, prescribe such practices and procedures as will promote a uniformity and parity of sentences within and among the various circuit courts and appellate court districts." 730 ILCS 5/5—5—4.2 (West 1998). Defendant also cites to section 5—5—4.3 of the Code of Corrections, entitled "Duties of Department

of Corrections," which requires the Department to publish an annual report which "shall be made available to trial and appellate court judges for their use in imposing or reviewing sentences under this Code." 730 ILCS 5/5—5—4.3(a) (West 1998). That report is to contain, *inter alia*, data concerning "the range, frequency, distribution and average" of terms of imprisonment imposed on offenders and of the terms actually served in prison. 730 ILCS 5/5—5—4.3(a)(1), (a)(2) (West 1998).

Defendant argues that a rule prohibiting the use of comparative sentencing information as a basis for attacking a sentence would be directly contrary to the legislature's intent in enacting the 1977 legislation. We are not persuaded by defendant's argument. The primary change effected by the 1977 legislation was to abolish our previous system of indeterminate sentencing and replace it with a system of determinate sentencing. According to the legislative history, a chief criticism of indeterminate sentencing was its dependence on rehabilitation as a sole basis of penal policy. See *Summary of the Report to the Illinois House Judiciary II Committee by the Subcommittee on Adult Corrections*, at 3 (June 24, 1976) (Subcommittee Report). The prior system of indeterminate sentencing was also criticized because its wide ranges of sentences, and its reliance upon the parole board to determine release dates, had led to excessively disparate and inequitable sentences. See Subcommittee Report at 4-5. The legislature chose to address these problems by changing to a system of determinate sentencing. There is no indication that the legislature also intended that the courts engage in case-specific comparative sentencing reviews.

Defendant's citation to sections 5—5—4.2 and 5—5—4.3 of the Code of Corrections does not support his argument. Although section 5—5—4.2 recognizes this court's authority to create rules to promote sentencing parity,

this section in no way suggests which rules or procedures this court should consider. The Code's requirement that the Department of Corrections publish general statistical data concerning the sentences imposed and served likewise does not support defendant's position. The legislature took this step, arguably in part to promote sentencing parity, but chose to go no further. The legislature did not make any reference to courts considering case-specific comparative sentencing information in determining the propriety of a particular sentence.

Thus, although we agree that sentencing parity was a goal of the legislature in enacting the 1977 legislation, we find that the legislature sought to advance that goal primarily by creating a determinate sentencing system. The legislature did not indicate that sentencing parity should be achieved by allowing the statutorily proper sentence imposed in one case to control the statutorily proper sentence imposed in another case. Moreover, as discussed above, the comparative sentencing approach advocated here by defendant would not truly promote the goal of sentencing parity because it would entail the comparison of only very limited information.

Defendant also argues that this court's practice in evaluating attorney discipline cases supports adoption of comparative sentencing. In considering the appropriate sanction for an attorney's misconduct, this court looks at the sanctions imposed in other cases with similar facts. See *In re Timpone*, 157 Ill. 2d 178, 197 (1993); *In re Tepper*, 126 Ill. 2d 109, 126 (1988). In this context, this court has stated that its "goal is to impose sanctions consistent with sanctions imposed for similar misconduct so as to ensure predictability and fairness in future disciplinary cases." *Timpone*, 157 Ill. 2d at 197. The court has also noted, however, that each disciplinary case is unique and must be resolved based on its own particular facts. *Timpone*, 157 Ill. 2d at 197; *In re Harth*, 125 Ill. 2d 281, 288 (1988).

Defendant contends that there is no justification for permitting consideration of comparative information in the attorney discipline context but not permitting consideration of comparative sentencing information in criminal cases. We disagree. Attorney discipline cases are distinguishable from criminal cases. As noted, under the Code of Corrections, each criminal offense is prescribed a range in which the sentence must fall. There are no such statutory ranges of punishment for attorney misconduct. Other than the discipline imposed in other attorney discipline cases, this court has no guidelines to use when reviewing sanctions for attorney misconduct.

Accordingly, we reject defendant's comparative sentencing approach. We hold that a claim that a sentence is excessive must be based on the particular facts and circumstances of that case. If a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case. The circuit court therefore did not err in striking defendant's comparative sentencing argument.

Contrary to the assertions of Justice Rathje's dissent, nothing in this opinion prevents a trial judge, in fashioning a sentence, from considering his or her knowledge of the sentences imposed in other cases. We simply will not require that a trial court justify its sentence in relation to the sentences imposed in other cases, and it will not be a basis for attacking a sentence that a defendant in a separate, unrelated case received a lighter sentence. Nor are reviewing courts prohibited, under our decision, from using other reviewing court opinions as legal precedent in deciding excessive-sentence claims. A court considering whether a sentence imposed was excessive may find it useful to look at the reasoning employed by another court in rejecting, or accepting, an excessiveness claim.

Justice Rathje's dissent also spends considerable time

protesting that we have misconstrued the argument made by defendant. His dissent correctly points out that defendant professes to ask only that courts be allowed, in their discretion, to consider evidence of sentences in other cases. A review of defendant's briefs and his oral argument, however, reveals that defendant seeks to *attack his sentence* on the ground that it is disparate in comparison to the sentences imposed in other cases. In the trial court, defendant filed a motion to reconsider his sentence on the ground that it was excessive when compared to the sentences imposed in other cases. Defendant's motion argued that his sentence could not be "reconciled" with the lesser sentences imposed in other cases, and requested that his sentence be "reduced to bring it in line with sentences imposed for comparable offenses." In this court, defendant asks that his sentence be reduced on the ground that the comparative sentencing information he has provided shows a "gross and unwarranted disparity" between his sentence and the sentences imposed in other cases. In pursuing this position, defendant repeatedly argues that the State has failed to "explain" the disparity between his sentence and the sentences received by other defendants. Moreover, at oral argument, counsel for defendant conceded that they were urging that, should comparative sentencing information be presented, a court *must* consider it. Likewise, in his briefs, defendant urges adoption of a rule that a court "act on" comparative sentencing information where it reveals an "unexplainable and gross disparity." Considering defendant's arguments as a whole, it is apparent that defendant's position is that, where a gross disparity between a defendant's sentence and that imposed in another case cannot be explained, fundamental fairness requires that the defendant's sentence be reduced.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of

the appellate court which affirmed the judgment of the circuit court granting the State's motion to strike and denying defendant's motion to reconsider his sentence.

*Affirmed.*

JUSTICE McMORROW, dissenting:

The defendant in the case at bar filed a motion to reconsider his sentence in which he argued, in part, that his sentence was excessive when compared to the sentences imposed on other defendants in comparable cases. The trial court struck this argument from defendant's motion, holding, as a matter of law, that in fashioning defendant's sentence, it could give no consideration whatsoever to the sentences imposed on other defendants in comparable cases.

The issue presented in this case is a narrow one: did the trial court err when it held, as a matter of law, that it was wholly prohibited from considering comparative sentencing information? I would hold that the court did err. There is no sound reason in law or policy why a trial court should not be permitted to consider comparative sentencing information along with all of the other factors it may consider when making sentencing decisions. I would hold that if a defendant presents case-specific information regarding sentences imposed on similarly situated offenders to the trial court, the court should be allowed, in the exercise of its discretion, to consider such information for the purpose of ensuring that the defendant's sentence is not inexplicably and grossly disparate. In my opinion, the sentencing court should have the discretion, if it chooses, to consider potentially relevant and useful information in order to reach a measured and just sentence within the applicable statutory sentencing range. There is no reason to artificially limit the information which the sentencing court has before it, as the majority in the case at bar has done.

Moreover, unlike the majority, I believe that section

5—5—4.3 of the Unified Code of Corrections (730 ILCS 5/5—5—4.3 (West 1998)) supports the use of comparative sentencing analysis. As Justice Rathje correctly observes, section 5—5—4.3 shows that sentencing parity is an explicit goal of the legislature and that "the legislature intended for the courts to have statistics of sentences in other cases available to them 'for their use in imposing and reviewing sentences.' " 189 Ill. 2d at 71 (Rathje, J., dissenting). Hence, section 5—5—4.3 supports defendant's argument that sentencing judges should be allowed, in the exercise of their discretion, to consider sentences imposed on other defendants in comparable cases.

I emphasize that I would not hold that trial judges are compelled to consider all comparative sentencing information which is presented to them, or that comparative sentencing information may, by itself, control the sentencing judge's decision. The question of whether to consider the comparative sentencing information should be left to the discretion of the trial judge, who may decide that, in some cases, the comparative sentencing information is inappropriate and should be given no weight, or, conversely, should be a factor in fashioning an appropriate sentence.

Accordingly, I would remand the case at bar to the trial court so that it might decide, in the first instance, what weight, if any, should be given to defendant's comparative sentencing argument.

CHIEF JUSTICE FREEMAN joins in this dissent.

JUSTICE RATHJE, also dissenting:
The majority brushes aside defendant's argument because it "runs the risk of erroneous conclusions." While the defendant's argument merely runs the risk of erroneous conclusions, the majority's approach assures them. The majority's approach to this case is to respond to an argument that was never made. When the dust has

settled from the wake of the majority opinion, trial courts are left without discretion to determine what evidence is relevant at a sentencing hearing, and the appellate court has been forbidden from considering certain cases in reviewing sentences. This unwarranted invasion into the province of the lower courts is ill-advised and will exacerbate the problem of grossly disparate sentences.

I agree with the argument that defendant actually makes in this appeal, which is that trial and reviewing courts should be *allowed*, in their *discretion*, to consider evidence of sentences in other cases as one of the many factors that courts rely upon in imposing and reviewing sentences. Defendant does not argue that courts should be required to do so or that sentences in other cases should be given any particular weight. The majority's decision appears to be inspired by the fear that someday, somewhere, a sentence might be reduced. This position fails to acknowledge that comparative sentencing arguments can also be made by the State, and comparative sentencing analysis can be used to uphold sentences.

## COMPARATIVE SENTENCING INFORMATION IN THE TRIAL COURT

The majority fails to draw a distinction between the different applications of comparative sentencing in trial and reviewing courts and uses the same analysis for both. Here, defendant pleaded guilty and received the highest sentence ever given in McHenry County for the particular offense. Defendant filed a motion to reconsider in which he asked the court to compare his sentence with those given other offenders who had committed the same offense. Defendant's evidence showed that his sentence was almost twice as long as sentences given to other defendants who had substantially fewer mitigating factors. The State moved to strike this information from defendant's motion. The trial court granted the motion to strike based on its belief that it was prohibited from

considering this information because the Appellate Court, Second District, does not engage in comparative sentencing review.

The factors controlling the admission of evidence at a sentencing hearing are relevance and reliability, and the determination of admissibility lies within the sound discretion of the trial court. *People v. Lyles*, 106 Ill. 2d 373, 414 (1985). In my opinion, the trial court should have discretion to decide whether to consider evidence of sentences in other cases. Here, the trial court should not have stricken the information, but rather should have exercised its discretion in determining whether to consider the evidence and what weight to give it. Whether the appellate court finds comparative sentencing information relevant in reviewing sentences under an abuse of discretion standard should have no bearing on whether the sentencing court has the discretion to consider comparative sentencing information in fashioning an appropriate sentence.

### COMPARATIVE SENTENCING REVIEW IN THE APPELLATE COURT

I would also allow the appellate court to consider comparative sentencing arguments. I do not believe this court should dictate to the appellate court how to review sentences to determine if the trial court in a particular case abused its discretion, particularly when this court has itself exercised its discretion to consider comparative sentencing arguments. See, *e.g.*, *People v. Smith*, 177 Ill. 2d 53, 98-100 (1997); *People v. Coleman*, 166 Ill. 2d 247, 261 (1995); *People v. Palmer*, 162 Ill. 2d 465, 491 (1994). In *Palmer*, we recognized the discretionary nature of this type of review. The defendant argued that he should not have received the death penalty, and he supported his argument with cases in which appellate courts had vacated the death sentences of defendants who had committed more serious acts of violence. We first acknowl-

edged that we were not required to engage in comparative proportionality review, but then exercised our discretion and chose to consider the cases defendant cited. After reviewing the cases, we determined that they did not support defendant's argument that his sentence should be vacated. *Palmer*, 162 Ill. 2d at 491. The majority now forbids the appellate court from engaging in the exact analysis that this court has used when presented with comparative sentencing arguments.

## THE MAJORITY APPROACH

The support that the majority offers for its decision to forbid courts from engaging in comparative sentencing analysis can be divided into three main categories, none of which is persuasive. The majority bases its decision upon (1) an apparent belief that comparative sentencing analysis could benefit only defendants; (2) a previously unheard of rule of statutory construction; and (3) the supposed negative results that would inevitably follow if comparative sentencing analysis were allowed.

### Dual Nature of Comparative Sentencing Analysis

An unstated but underlying theme in the majority opinion is that comparative sentencing analysis is something that could help only defendants. The majority does not acknowledge that the State could use comparative sentencing analysis in support of its position, but clearly the State could do so. The State could argue in the trial court that a defendant deserved a very harsh sentence because other defendants who committed similar crimes also received lengthy sentences. In the appellate court, the State could argue that a defendant's sentence was justified based upon other sentences received by similarly situated defendants.

The dual nature of comparative sentencing analysis can best be seen in this court's decision in *People v. Smith*, 177 Ill. 2d 53 (1997). *Smith* was issued two years

ago, before this court decided to find comparative sentencing analysis objectionable. This court vacated the defendant's death sentence based on a review of other cases in which the death penalty was found excessive. *Smith*, 177 Ill. 2d at 98-101. The discussion on this issue began, "An analysis of previous cases where this court has found a death sentence to be excessive is useful." *Smith*, 177 Ill. 2d at 98. What this court found useful two years ago, it now forbids other courts from considering.

Three justices dissented in *Smith* and used comparative sentencing analysis to support their position. The dissenting justices reviewed cases in which defendants had relatively clean criminal records, yet still received the death penalty. See *Smith*, 177 Ill. 2d at 114-15 (Miller, J., dissenting, joined by Bilandic and Heiple, JJ.). Thus, comparative sentencing arguments could be made by both the State and defendants, and the majority's apparent fear of the one-sided nature of this type of analysis is unfounded.

An additional problem with the majority's fear of defendants making comparative sentencing arguments is that, under the majority's rule, defendants will now look for any evidence that the sentencing judge used a comparative sentencing approach instead of carefully crafting a sentence based on the individual's circumstances. Any statement by the trial judge or State's Attorney that the defendant should receive the "typical" or "usual" sentence for a person in the defendant's position could amount to reversible error. Under a discretionary system, that would not be the case. The majority's approach will severely hamper judges in sentencing defendants for frequently occurring minor offenses.

### Statutory Construction

One of defendant's arguments in support of allowing courts to engage in comparative sentencing analysis is

that such an analysis comports with legislative intent to achieve parity in sentencing. The majority acknowledges that sentencing parity was one of the legislature's goals in enacting the 1977 sentencing legislation. The legislature sought to implement this policy by changing from an indeterminate to a determinate sentencing system. The legislature invited this court to help with the problem of disparate sentences. Part of the 1977 legislation was the enactment of section 5—5—4.2 of the Unified Code of Corrections. This section, entitled "Statewide Sentence Equalization Procedures," provides that the supreme court may, by rule, implement practices and procedures that will promote parity in sentencing. The majority's decision—removing all discretion from trial and reviewing courts to engage in comparative sentencing analysis—is this court's RSVP to the legislature's invitation. The majority justifies this result by holding that the legislature did not intend for courts to engage in comparative sentencing analysis.

The most difficult obstacle facing the majority's conclusion that the legislature did not intend for courts to engage in comparative sentencing analysis is section 5—5—4.3 of the Unified Code of Corrections (730 ILCS 5/5—5—4.3 (West 1998)). This section provides that the Department of Corrections shall publish an annual report containing, *inter alia*, "The range, frequency, distribution and average of terms of imprisonment imposed on offenders committed to the Department of Corrections, by offense." 730 ILCS 5/5—5—4.3(a)(1) (West 1998). The statute specifically provides that the report "shall be made available to trial and appellate court judges *for their use in imposing or reviewing sentences* under this Code." (Emphasis added.) 730 ILCS 5/5—5—4.3(a) (West 1998). Although this part of the majority's analysis is unclear, the majority seems to construe this statute to mean that the legislature did not intend for trial and ap-

pellate court judges to use these statistics in imposing and reviewing sentences.[1] Here, I must plead ignorance and admit that I am unfamiliar with the canon of statutory construction that says that we construe a statute to mean exactly the opposite of what it says.

In rejecting defendant's argument on this issue, the majority claims that the legislature enacted this statute but chose to go "no further." The majority then claims that "[t]he legislature did not indicate that sentencing parity should be achieved by allowing the statutorily proper sentence imposed in one case to control the statutorily proper sentence imposed in another case." 189 Ill. 2d at 61. This is yet another example of the majority attempting to justify its result by misstating defendant's argument. Nowhere in defendant's brief does he argue that sentences in particular cases should be controlled by sentences in other cases. He merely argues that courts should be *allowed* in their *discretion* to consider sentences in other cases. Section 5—5—4.3 shows that the legislature intended for the courts to have statistics of sentences in other cases available to them "for their use in imposing and reviewing sentences." The result of today's opinion must be that courts are now forbidden from using these statistics.

As unconvincing as the majority's attempt to rewrite section 5—5—4.3 is the majority's casual dismissal of section 5—5—4.2. As stated, section 5—5—4.2 recognizes this court's authority to create rules to promote sentencing parity. Defendant relies on this section to support his argument that sentencing parity was a goal of the 1977 sentencing legislation. The majority dismisses

---

[1]In fact, the majority must be holding that courts are forbidden to use these statistics in imposing and reviewing sentences. If courts are allowed to use these statistics in imposing and reviewing sentences, then they are necessarily engaging in comparative sentencing analysis.

defendant's argument with one sentence: "Although section 5—5—4.2 recognizes this court's authority to create rules to promote sentencing parity, this section in no way suggests which rules or procedures this court should consider." 189 Ill. 2d at 60-61. This statement does not even address defendant's argument. The point of defendant's argument is simply that sentencing parity is a goal of the legislature. Although the majority is correct in stating that this section does not suggest what rules or procedures the court should adopt, the statute does suggest that the rules or procedures, whatever they may be, should promote sentencing parity. I believe I can state with some certainty that the intent of the legislature was not that this court should create rules that remove discretion from the lower courts and ensure that sentences will become much more disparate. I am also fairly certain that the legislature did not intend for this court to construe section 5—5—4.3 to mean exactly the opposite of what it says.

Defendant's argument that a rule forbidding comparative sentencing review would be contrary to legislative intent is well supported by sections 5—5—4.2 and 5—5—4.3. The majority's attempt to construe these statutes in favor of its rule is entirely unpersuasive.

### Negative Consequences

The majority lists several negative consequences that would supposedly occur if comparative sentencing analysis were allowed. The first negative consequence the majority espouses is that the permissible range of sentences could be effectively reduced below that set by statute because judges would be forced to follow more lenient sentences given in other cases. The majority reaches this conclusion only because of its refusal to consider the argument actually presented. Defendant argues solely that courts should, in their discretion, be permitted to consider evidence of sentences in other cases as one of

the many factors a court considers in fashioning a sentence. Under a discretionary system, judges would be free to consider or reject comparative sentencing information and could assign it whatever weight they deem appropriate.

The majority's assertion that "the prior lenient sentence would control the later case" is simply untrue and unfairly characterizes defendant's argument. It is a well-settled rule that courts are not required to recite and assign a particular value to any particular factor at sentencing. See, e.g., People v. Mayoral, 299 Ill. App. 3d 899, 913 (1998); People v. Cord, 239 Ill. App. 3d 960, 968-69 (1993); People v. Kyse, 220 Ill. App. 3d 971, 975 (1991); People v. Keyes, 175 Ill. App. 3d 1013, 1019-20 (1988). Defendant does not argue that the evidence of sentences in comparable cases should be assigned any particular value, let alone be deemed "controlling," and the majority offers no support for its assertion that this factor would be treated differently. This claim by the majority is merely an incorrect statement that serves only to make the subsequent erroneous conclusion more palatable.

The majority denies that it is misconstruing defendant's argument and devotes a paragraph to explaining why its characterization of defendant's argument is accurate. Suffice it to say that the briefs and oral arguments in this case are a matter of public record, and anyone who is interested can find out if it is the majority or the dissent that correctly states defendant's argument.

One statement in the majority's characterization of defendant's argument needs to be clarified. The majority seizes on defense counsel's statement at oral argument that, if comparative sentencing evidence is presented to a trial court, the court must consider it. What the attorney said at oral argument was that, like any other evidence

that is presented to a court, the court should at least look at it, but that the court could give it whatever weight it's worth, "which could be none." In other words, defendant concedes that the trial court has the discretion to give the evidence absolutely no weight.

In further explaining why it is not misconstruing defendant's argument, the majority trumpets in italics that defendant seeks to *attack his sentence* because it is grossly disparate to sentences imposed in other cases. I am unsure what point the majority is trying to make or how that defeats my argument. Of course defendant is seeking to attack his sentence in this case. Whose sentence, if not his own, would he be attacking? The reason we are considering this appeal is that defendant is seeking to attack his sentence based upon a comparative sentencing argument. The only issue is *whether defendant should be allowed to make that argument*, not whether the other sentences should control defendant's sentence.

Finally, even assuming that defendant did argue that courts should be required to engage in comparative sentencing analysis, that does not mean that we could not adopt a discretionary approach. If one party argues black and the other party argues white, we are free to say that the answer is gray. Our responsibility in this case is to state the proper rule for the lower courts, and we are not bound by what either side argues.

The majority next argues that comparative sentencing analysis runs the risk of erroneous conclusions. The majority's argument here is that comparative sentencing is not an exact science and that a court will never know all of the facts and circumstances of the other cases. Aside from the fact that such an argument goes only to the weight that should be given the information, not to whether it should be considered, the majority's premise is demonstrably false. Assume a situation in which a first

time offender with numerous mitigating factors and no aggravating factors receives the maximum sentence for an offense, while no one else in that circuit, including violent repeat offenders, had ever received the maximum. Would a court really need to know everything about all of those cases to know that the defendant's sentence was unfair and disproportionate? Under the majority's rule, a defendant could not even present that evidence to the court.

The majority also argues that comparative sentencing information would be flawed because published appellate opinions represent an incomplete sample that does not include the numerous cases disposed of by unpublished orders. This is a strange argument for the majority to make, given that the defendant in this case relied on Rule 23 orders at the hearing on the motion to reconsider his sentence. One of the main cases defendant compared his to was *People v. Estrada*, No. 2—92—1297 (1994) (unpublished order under Supreme Court Rule 23), in which the defendant committed the same crime in the same county, had substantial aggravating factors, but received a sentence 11 years shorter. The State argues that Rule 23 orders and summary orders cannot be relied on as legal precedent. This argument misses the point because defendant was not relying on the cases for their legal analysis, but as evidence of sentences handed down in similar cases.

Further, comparative sentencing information would not be skewed because the Department of Corrections publishes statistics of sentences in criminal cases and makes this information available to trial and appellate courts to be used in imposing and reviewing sentences.[2] See 730 ILCS 5/5—5—4.3 (West 1998). Thus, if a court

---

[2]Although, as stated earlier, the apparent result of today's decision is that trial and appellate courts will be forbidden from consulting these statistics.

believed that the information presented to it did not fairly represent the range or average of sentences, the court could consult these statistics. The appellate court has referenced these statistics in certain cases in finding that a sentence was excessive. See *People v. Weiss*, 263 Ill. App. 3d 725, 735-36 (1994); *People v. Neither*, 230 Ill. App. 3d 546, 551-52 (1992); *People v. McCumber*, 148 Ill. App. 3d 19, 24-25 (1986). Thus, the majority's concerns about skewed samples are illusory.

The court also discounts the use of information about sentences from other cases on the grounds that "persons who commit crimes independently are 'seldom, if ever, similarly situated.' " 189 Ill. 2d at 58-59, quoting *People v. Palmer*, 162 Ill. 2d 465, 491 (1994), quoting *People v. Conaway*, 101 Ill. App. 3d 202, 204 (1981). This empty assertion is oft-stated but never proved or supported by authority. The fact is that people who commit the same types of crimes very often *are* similarly situated. They are not identically situated, of course, but different defendants will frequently exhibit similarities upon which they can be compared.

Hundreds of defendants are sentenced every day in this state. Although a court considers many specific factors in sentencing a defendant, the most important considerations are generally the crime committed, other trouble the defendant has been in, and the defendant's rehabilitative potential. For the routine crimes that are committed every day, the judge will have seen countless defendants who are similarly situated. An experienced judge will likely have an idea of what a fair sentence would be, based on the numerous other similar cases that judge has heard.

For instance, when a trial judge is faced with a second-time DUI offender, and the assistant State's Attorney recommends the typical disposition for a second-time offender and the trial judge agrees, is the court

carefully crafting a sentence based on the individual's circumstances, or is the court giving the defendant the same sentence he gives all other similarly situated defendants?[3] The majority offers no support for its bald assertion that people who commit similar crimes are rarely similarly situated.

Trial judges who sentence thousands of defendants cannot be expected to act in a vacuum. See *People v. Tye*, 141 Ill. 2d 1, 23-24 (1990). Comparative sentencing evidence would merely augment a judge's own memory of similar cases. Trial judges should not be expected to forget what they did in every other similar case and reinvent the wheel every time a new defendant comes before them.

## MAJORITY'S RESPONSE TO THE DISSENT

In responding to the arguments raised in this dissent, the majority appears to unravel its whole opinion. In a stunning reversal in the penultimate paragraph of the analysis section, the majority states that, "Contrary to the assertions of Justice Rathje's dissent, nothing in this opinion prevents a trial judge, in fashioning a sentence, from considering his or her knowledge of the sentences imposed in other cases." 189 Ill. 2d at 62. In other words, trial courts *can* engage in comparative sentencing analysis.

The majority seemingly retreats from the position taken in the rest of the opinion and allows trial courts to consider a limited kind of comparative sentencing information in fashioning a sentence. The majority's rule is that, as long as the trial court is *already aware* of the other sentences, it can consider them. However, the parties are not allowed to argue about any sentences of which the judge is not already aware. In other words, the

---

[3]As suggested earlier, this common scenario could very well amount to reversible error under the majority's rule.

majority sees no problems with comparative sentencing based on the frailties of an individual's memory, but recoils at the notion of comparative sentencing based upon statistically complete evidence. Not surprisingly, the majority gives no reason for drawing such a distinction.

Furthermore, the majority cannot square this approach with the positions taken in the rest of the opinion. The majority holds that a court must make its sentencing determination on the particular facts of each case. If that is true, then the court should not be considering sentences it imposed in other cases. Also, the majority endorses the view that defendants are rarely, if ever, similarly situated. Again, if that is true, the court should not be considering sentences it imposed in other cases. Finally, the problems the majority believes are inherent in comparative sentencing would also be present if judges are allowed to consider sentences they imposed in other cases: judges would be relying on incomplete evidence, and the effective maximum sentence for an offense could be reduced to well below that set by statute if the judge felt compelled to follow other sentences.

## CONCLUSION

The problem of similarly situated defendants receiving widely disparate sentences is a vexing one, and I do not profess to have an answer that will eradicate the problem. I do, however, work from the assumption that in a fair and equitable criminal justice system, similarly situated defendants should not receive grossly disparate sentences. The majority never states whether it agrees with this sentiment. One very small step this court could take toward achieving that goal would be to allow trial courts, in their discretion, to consider evidence of sentences in similar cases and to allow reviewing courts to consider a defendant's argument that his sentence is out of line with sentences imposed in similar cases. Trial and

appellate courts should also have discretion to consider arguments from the State that, based on sentences given other defendants, a particular defendant deserves a lengthy sentence. Courts would not have to assign any particular weight to these arguments and could use the information as they see fit.

The majority never considers the viability of such an approach. Instead, the majority forbids trial courts from even hearing evidence of sentences in other cases and forbids reviewing courts from hearing arguments about sentences in other cases. This approach is simply an over-reaction to an argument that defendant never made, namely that courts should be required to engage in comparative sentencing review and that sentences in other cases will control the sentence in the case before the court.

Perhaps the most interesting case to read side-by-side with the majority opinion is *People v. Tye*, 141 Ill. 2d 1 (1990). In *Tye*, the trial court made the following comment in sentencing the defendant to death:

> "In evaluating your acts I, as a jury, have a right, have a right to draw upon my experiences in life to determine how serious your crime was. And I'll state for the record that for a period of seven years I was a homicide detective in the City of Chicago; and I investigated numerous child beatings. And I spent a total [of] 25 years in the criminal justice system. And I have never seen a child beaten with such viciousness, repeatedly beaten over an hour to the extent her death was caused." *Tye*, 141 Ill. 2d at 19-20.

The defendant argued that the trial judge improperly relied upon his experiences as a homicide detective and his knowledge of other child abuse cases in sentencing the defendant to death. This court rejected defendant's argument, holding that it was appropriate for a sentencer to rely upon his or her own background and experience in life and that a judge should not have to make such decisions in a vacuum. *Tye*, 141 Ill. 2d at 23-24.

An interesting assignment would be to give a law

80

student a copy of *Tye* and the majority opinion in this case and ask what principle governs the Illinois Supreme Court's jurisprudence concerning other cases a judge can consider in fashioning a sentence. *Tye* tells the student that it is perfectly appropriate and permissible for the trial judge to rely *sua sponte* upon a handful of cases from years ago, of which the judge has personal knowledge and the parties know nothing, in sentencing a defendant to death. *Fern*, however, tells the student that both the defendant and the State are absolutely forbidden to argue in favor of a particular sentence, based on statistically complete evidence of sentences in other similar cases that are a matter of public record. This hypothetical assignment is interesting not because of the question it asks but because of the answer it yields: there is *no* principle at work in these cases. Accordingly, I dissent.