NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180490-U

NO. 4-18-0490

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ELISHA HALLAM, | ) | No. 17CF297 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court because defendant's sentence was not
excessive and the trial court did not improperly consider the factors in sentencing
defendant but reduced defendant's 14-year sentence to 7 years in prison.

¶ 2        In October 2017, the State charged defendant, Elisha Hallam, with three counts of

unlawful delivery of a controlled substance. Count I alleged that on September 2, 2017, defendant

knowingly delivered heroin to a confidential informant (CI) in violation of section 401(d)(i) of the

Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d)(i) (West 2016)), a Class 2 felony.

Count II alleged that on September 28, 2017, defendant knowingly delivered more than one gram

of heroin to the same CI in violation of section 401(c)(1) of the Act (*id.* § 401(c)(1)), a Class 1

felony. Count III alleged that on October 4, 2017, defendant again knowingly delivered more than

one gram of heroin to the same CI in violation of section 401(c)(1) (*id.*). The State asserted that

defendant was extended-term eligible for all three counts due to a prior Class 3 felony conviction

for delivery of a controlled substance from 2013, making her eligible for up to 14 years' imprisonment for count I and 30 years' imprisonment for counts II and III.

¶ 3        In March 2018, defendant entered an open guilty plea to all three counts. In May 2018, the trial court sentenced defendant to 22 years in prison for counts II and III and 14 years in prison for count I, all to be served concurrently.

¶ 4        Defendant appeals, arguing that (1) her 22-year prison sentence is excessive because it is (a) greatly at odds with the spirit and purpose of the law and (b) manifestly disproportionate to the nature of her offenses, (2) the trial court denied defendant a fair sentencing hearing when it considered in aggravation factors inherent in the offense, and (3) the trial court erred by imposing an extended term sentence of 14 years' imprisonment for the Class 2 conviction when it had already imposed a 22-year sentence for the more serious Class 1 convictions arising out of the same course of conduct.

¶ 5        For the reasons that follow, we affirm defendant's 22-year sentences for counts II and III. We modify defendant's 14-year sentence for count I to 7 years in prison.

¶ 6                                I. BACKGROUND

¶ 7                            A. The Procedural History

¶ 8        In October 2017, the State charged defendant with three counts of unlawful delivery of a controlled substance. Count I alleged that on September 2, 2017, defendant knowingly delivered heroin to a CI in violation of section 401(d)(i) of the Act (*id.* § 401(d)(i)), a Class 2 felony. Count II alleged that on September 28, 2017, defendant knowingly delivered more than one gram of heroin to the same CI in violation of section 401(c)(1) of the Act (*id.* § 401(c)(1)), a Class 1 felony. Count III alleged that on October 4, 2017, defendant knowingly delivered more than 1 gram of heroin to the same CI in violation of section 401(c)(1) of the Act (*id.* § 401(c)(1)),

a Class 1 felony. The State asserted that defendant was extended-term eligible for all three counts due to a prior Class 3 felony conviction for delivery of a controlled substance from 2013, making her eligible for up to 14 years' imprisonment for count I and 30 years' imprisonment for counts II and III.

¶ 9 In March 2018, defendant entered an open guilty plea to all three counts. The State provided the following factual basis:

"On September 2nd, September 28th, and October 4th, 2017, this Defendant delivered an amount of controlled substance, heroin, to police confidential source 00517, with the amount exceeding one gram on September 28th and three grams on October 4th of 2017, as confirmed by lab testing at Joliet crime lab, the Illinois State Police crime laboratory."

¶ 10 The trial court accepted the guilty pleas and ordered a presentence investigation report (PSI).

¶ 11 B. The Presentence Investigation Report

¶ 12 The PSI noted that the first sale was completed at defendant's residence. Defendant used part of the heroin before giving the remaining 0.4 grams to the CI. The second sale occurred at a Casey's gas station, at which the CI received 2.3 grams of heroin.

¶ 13 The final transaction was again at the Casey's gas station. At that transaction, defendant originally offered to bring $200 worth of heroin, but the investigating officer told the CI to request $300 worth of heroin. Defendant said she could provide that amount. Once the CI received the heroin, the CI signaled the police and the police went after defendant. The police pulled defendant's car over and discovered hypodermic syringes and several clear capsules that contained 9 grams of heroin in total.

¶ 14　　　　Defendant spoke with officers after her arrest and explained she was not selling heroin but instead helping a friend that reached out to her. Defendant said she used $250 to purchase heroin from Chicago and that one month prior she had purchased $500 worth of heroin in Chicago. She claimed she did not sell heroin often and had not been to Chicago in a long time.

¶ 15　　　　In the PSI, defendant described the offenses as follows: "I arranged another individual obtaining drugs 3 times." She said she committed the offenses because she "rationalized [her] choices with [her] need to not be sick." The PSI noted defendant explained as follows:

> " 'I knew I would be able to use and feel better, that was immediately followed by guilt and anger with myself.' She noted she was 'not trying to make light of it, but dealing was not a lifestyle for me. I would get it for friends because they would usually share and I would no longer get sick.' When prompted to write whether or not she felt her actions were wrong the defendant wrote 'Without question, yes.' She further added 'My actions/crimes caused consequences for more than just myself.' "

Defendant further stated:

> "I wish I was not at this point again in my life. I [accept] full responsibility for my mistakes. I have hopes that this situation brings about the change in me that people have been hoping to see for far too long. I've never been this emotionally or mentally exhausted in my life and today, regardless of the outcome, starts the truest path to rebuilding myself that I have ever been on."

¶ 16　　　　The PSI noted that defendant was unemployed but engaged to be married and financially supported by her fiancé, who did not struggle with addiction. Defendant also had mental health diagnoses, including bipolar disorder, depression, and anxiety. Defendant explained

that she had a history of substance abuse in her family and that her brother died from a heroin overdose. Defendant stated that her substance abuse started when she was 13 years old and began drinking alcohol. She detailed her use of cannabis, cocaine, LSD, hallucinogenic mushrooms, MDMA, benzodiazepines, Vicodin, and other opioids.

¶ 17 Defendant began using heroin when she was 17 years old and used it occasionally until 2007 when she began using a quarter of a gram daily. Because of her usage, she obtained three felony convictions for possession of a controlled substance between 2009 and 2015, along with a 2012 felony theft conviction and a 2013 forgery conviction. Defendant had been addicted to opioids for 10 years, had overdosed three times, and was admitted for detox in 2010 at the Prairie Center in Champaign, Illinois. Defendant also received treatment in Pontiac, Illinois from 2009 to 2015. Defendant was in residential treatment in 2011. Defendant claimed her longest period of sobriety outside of a controlled environment was 15 months from January 2016 to March 2017.

¶ 18 C. The Sentencing Hearing

¶ 19 In May 2018, the trial court conducted defendant's sentencing hearing. Neither party presented any evidence. The State recommended a 22-year prison sentence, noting that the maximum sentence was 30 years in prison. The State argued as factors in aggravation that (1) defendant had six prior felony convictions, (2) defendant had been given "all the support and resources that someone would need to be successful" but had "failed to use those opportunities to do anything positive in the community or in her life," (3) defendant constituted a financial cost to the community and a "well being cost," (4) defendant delivered one of the most highly toxic controlled substances, (5) it was "a non-possessory offense" by someone with "no other visible means of support," and (6) the sentence was necessary to deter others from committing the same crime.

¶ 20　　　　Defense counsel began by noting that defendant knew she was going to prison and was not proud of her criminal history. Counsel argued that defendant was not making excuses but was simply recognizing that she committed the crimes that she did in order to support her drug use and rationalized her actions because she needed to not be ill. Counsel recommended a sentence to boot camp or the impact incarceration program. Counsel also requested that defendant be ordered to complete a drug treatment program.

¶ 21　　　　Defense counsel further noted that defendant's last prison sentence was for 3 years, making the State's recommendation of 22 years a little over 7 times that amount. Counsel then recommended that, if the trial court did not sentence defendant to boot camp, it should sentence her to six years in prison along with a treatment program.

¶ 22　　　　Defendant made a statement to the trial court in which she said that she was not simply saying the "right things," but it was her "being a hundred percent heartfelt every time I have to answer for what I've done." Defendant said she was ready to accept the consequences and "hopefully finally make something different happen in my life."

¶ 23　　　　The trial court found deterrence was a strong factor in aggravation, stating that defendant's conduct "threatened serious harm to the community, especially in the amounts that we're talking about here. This isn't just a one little hit amount of heroin." The court also found as factors in aggravation: (1) defendant's record, (2) that defendant delivered one "of the most highly toxic controlled substances," and (3) that she had no other visible means of support.

¶ 24　　　　The trial court further recognized that defendant had struggled with addiction in her life and was raised in an environment that was "not conducive to being a contributing, lawful, law-abiding citizen of the community." However, the court said it had exhausted every resource in an attempt to help defendant overcome her addiction. The court noted that defendant was

contributing to the addiction problem in the community and said she was not "really accepting full responsibility for the seriousness of these charges" because defendant had said she was "helping a friend not get sick." The court said, "That's not how we help addicts. We don't help addicts by giving them more drugs, making drugs available to them. That is making it worse. It's making the problem worse." The court further concluded that defendant was not merely doing this to support her drug habit.

¶ 25 The trial court found no factors in mitigation and stated the following: "You are clearly not going to be able to succeed in probation. You are not, you are very likely to continue doing this or worse. You know, I'm not sure how you get much worse than three deliveries at this level, Class 1 felony; but, you know, I think that's what would happen."

¶ 26 The trial court sentenced defendant to 22 years in prison for counts II and III and 14 years in prison for count I, all to be served concurrently. The court noted that if defendant received all of her good time credits, she would serve 11 years in prison. The court further found that defendant committed the offense as a result of addiction.

¶ 27 D. The Motion to Reconsider Sentence

¶ 28 In May 2018, defendant filed a motion to reconsider her sentence. The motion contended that the trial court erred by (1) failing to consider the statutory mitigating factors under section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2016)), (2) improperly considering factors in aggravation that were inherent in the offense, (3) imposing a sentence that "was unduly harsh and punitive in consideration of the Defendant's display of remorse," and (4) failing to sentence defendant in a manner that had "the objective of restoring the offender to useful citizenship."

¶ 29 In July 2018, the trial court conducted a hearing on defendant's motion. Defendant

argued that (1) she was not selling drugs for a profit but instead to fuel her addiction, (2) she did not contemplate harm to another individual, (3) the court "took too much consideration into the fact that this was a distribution of an illegal substance," (4) the court improperly considered that defendant was paid compensation because that is inherent in a delivery offense, (5) the court failed to properly consider defendant's mental health problems, and (6) 22 years in prison was unduly harsh based upon the amount of heroin involved.

¶ 30 The State argued that the sentence was appropriate because (1) defendant's prior felonies were committed while she was on probation, (2) she had not addressed her addiction despite repeated attempts at treatment, and (3) the 22-year sentence was below the 30-year maximum sentence.

¶ 31 The trial court stated that it did not recall discussing compensation but, if it did, it considered compensation only minimally. The court noted that even if defendant was not a large-scale distributor, she was a distributor in the community. The court determined the sentence was appropriate given (1) the need for deterrence, (2) defendant's prior record, (3) her "pattern of conduct," and (4) "the fact that she was delivering the most highly toxic substances." The court denied the motion.

¶ 32 This appeal followed.

¶ 33                                    II. ANALYSIS

¶ 34 Defendant claims on appeal that (1) her 22-year prison sentence is excessive because it is (a) greatly at odds with the spirit and purpose of the law and (b) manifestly disproportionate to the nature of her offenses, (2) the trial court denied defendant a fair sentencing hearing when it considered in aggravation factors inherent in the offense, (3) the trial court erred by imposing an extended-term sentence of 14 years' imprisonment for the Class 2 conviction when

it had already imposed a 22-year sentence for the more serious Class 1 convictions arising out of the same course of conduct.

¶ 35                          A. Defendant's Sentence Was Not Excessive

¶ 36                                            1. *The Law*

¶ 37          Courts review claims of excessive sentencing for abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-75, 659 N.E.2d 1306, 1308-09 (1995). The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To succeed on appeal, a defendant must show that the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999). A reviewing court will not substitute its judgment for that of the trial court merely because it may have weighed the factors differently. *Id.* at 53.

¶ 38                                          2. *This Case*

¶ 39          Defendant has a lengthy criminal history that includes numerous drug convictions. In October 2009, defendant was convicted of possession of a controlled substance, a Class 4 felony, and possession of a hypodermic needle, a Class A misdemeanor, and was sentenced to (1) 30 months' first-offender probation, (2) 180 days in jail, which the court stayed, (3) drug treatment, and (4) community service. In November 2009, the trial court sentenced defendant to 14 days in jail. In January 2011, defendant's first-offender probation was revoked, and defendant was resentenced to (1) two years of intensive probation, (2) 180 days in jail, which the court stayed, and (3) drug treatment. In March 2012, the State filed a second petition to revoke defendant's probation, and in June 2012, the court extended defendant's probation to January 2014, with 180 days in jail stayed. In December 2013, the probation was terminated.

¶ 40    In December 2013, defendant was convicted of "Other Amount Narcotic Schedule I & II (Class 2 Felony) & Possession of Hypodermic Needle/2nd (Class 4 Felony)" per her PSI and sentenced to three years in prison.

¶ 41    In October 2015, defendant was convicted of possession of a controlled substance, a Class 4 felony, and possession of drug paraphernalia, a Class A misdemeanor, and sentenced to (1) 30 months of probation, (2) 120 days of jail with 60 days stayed, and (3) drug treatment. In March 2016, the State filed a petition to revoke defendant's probation, and in April 2016, the trial court resentenced defendant to further probation. In June 2016, a second petition to revoke was filed, and in August 2016, the court sentenced defendant to 60 days in jail and her probation was terminated.

¶ 42    We note that in addition to these drug crimes, defendant has misdemeanor convictions for battery, domestic battery, and retail theft. Defendant also has felony convictions for theft and forgery.  We further note that defendant has never completed probation successfully.

¶ 43    The trial court considered defendant's criminal record as a "very strong factor in aggravation." The court relied on the statutory factor that the delivery of the most highly toxic controlled substances, such as heroin, warrant more severe penalties. 720 ILCS 570/411(1) (West 2016). The court also cited the statutory factor of non-possessory offenses by persons who have no other visible means of support. *Id.* § 411(4). The court also considered deterrence and the threat of harm to the community as factors in aggravation.

¶ 44    Defendant argues that the trial court improperly applied section 411(4) of the Act (*id.*) because she did not lack another visible means of support and instead was supported by her fiancé. We conclude the trial court did not abuse its discretion by applying this factor because although defendant claimed she was supported by her fiancé, the PSI clearly showed that she was

unemployed and engaging in drug transactions at an alarming rate. In short, the court was not required to believe defendant's claim, and it did not abuse its discretion by concluding that the balance of evidence on this issue was in favor of applying this factor.

¶ 45     Defendant also argues that because section 411 of the Act (*id.* § 411) was created to authorize a heavy penalty against large-scale wholesale dealers in heroin, the trial court's application of section 411 for a relatively small-scale dealer was improper. We emphatically disagree. Section 411 concludes by stating, "Nothing in this section shall be construed as limiting in any way the discretion of the court to impose any sentence authorized by this Act." *Id.* When the legislature so plainly describes its intent in the statute itself, we take it at its word. Here, the trial court applied the portions of section 411 that apply and did not apply those that are only for large-scale dealers, such as section 411(2). *Id.* § 411(2). We conclude that the trial court did not err by doing so.

¶ 46     Defendant further argues that the trial court erred by (1) explaining that it was unconvinced that defendant was only selling drugs to support her addiction, stating that "[a]t some point you go too far, and it seems to me that when you are going to this level it's more than just an addiction," (2) considering defendant's addiction as aggravating rather than mitigating, (3) failing to consider defendant's acceptance of responsibility as mitigating, and (4) failing to consider defendant's mental health diagnoses as mitigating.

¶ 47     First, we do not conclude that the trial court erred by remaining unconvinced that defendant was selling drugs only to support her addiction and not for profit. Contrary to defendant's assertion, the amount of drugs sold by defendant and the value of those drugs was enough to support the trial court's skepticism. Second, we do not conclude the court erred by considering defendant's addiction as aggravating rather than mitigating. It is well established that

- 11 -

trial courts are not required to view addiction as a factor in mitigation, and therefore, we conclude the trial court did not err. See *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 108, 126 N.E.3d 703. Third, the record demonstrates that the trial court had ample reason to find defendant did not fully accept responsibility for her actions. In coming to this conclusion, the court focused on defendant's assertion at sentencing that she was merely "keeping [a friend] from being sick." The court could fairly view this explanation as minimizing the seriousness of the offense, and therefore we conclude the trial court did not abuse its discretion by doubting the sincerity of defendant's acceptance of responsibility. Fourth, we conclude that the trial court did not abuse its discretion by not considering defendant's mental health problems as mitigating. *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 44, 126 N.E.3d 787 ("[A] defendant's mental or psychological impairments are not inherently mitigating.").

¶ 48    We conclude that in light of defendant's criminal history and the factors in aggravation, the trial court did not abuse its discretion by imposing a 22-year prison sentence.

¶ 49    B. The Trial Court Did Not Err by Considering the Quantity of Drugs

¶ 50    Defendant next contends that by considering the quantity of heroin distributed by defendant, the trial court considered a factor inherent in the offense. We disagree.

¶ 51                                    1. *The Law*

¶ 52    A trial court acts improperly if it considers "the potential societal danger posed by the quantity of drugs." *People v. Davis*, 2019 IL App (1st) 160408, ¶ 78. "A sentencing judge, however, can properly consider the quantity of drugs as an aggravating factor when determining the seriousness of the offense." *Id.* In *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 71, 129 N.E.3d 755, we concluded, "Anything and everything beyond the minimum conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a

sentencing court to consider."

¶ 53                                2. *This Case*

¶ 54            Section 401(c)(1) of the Act states that it is a Class 1 felony for a person to deliver

"1 gram or more but less than 15 grams of any substance containing heroin ***." 720 ILCS

570/401(c)(1) (West 2016). The amount delivered by defendant was 2.3 grams of heroin for count

II, and "three grams," according to the State's factual basis, for count III. Both of these amounts

are in excess of the minimum of one gram required for the statute to apply. The trial court discussed

the amount of heroin as a factor in the context of the danger it poses to society for overdoses. The

court is entitled to consider the increased danger for overdoses that a larger amount of heroin poses.

See *Davis*, 2019 IL App (1st) 160408, ¶ 78.

¶ 55                   C. Defendant's 14-Year Sentence Was Improper

¶ 56            Defendant argues that the trial court erred by applying the extended-term

sentencing range of up to 14 years in prison for defendant in violation of section 5-8-2 of the

Unified Code of Corrections. 730 ILCS 5/5-8-2(a) (West 2016) ("A judge shall not sentence an

offender to a term of imprisonment in excess of the maximum sentence authorized by Article 4.5

of Chapter V for an offense or offenses within the class of the most serious offense of which the

offender was convicted unless the factors in aggravation set forth in Section 5-5-3.2 or clause

(a)(1)(b) of Section 5-8-1 were found to be present."). We agree that defendant's 14-year sentence

violated that statute. The Illinois Supreme Court has held that "a court of review has the power to

reduce a defendant's sentence on appeal once it has been determined that the trial court's sentencing

decision was unlawful or an abuse of discretion." *People v. Jones*, 168 Ill. 2d 367, 378, 659 N.E.2d

1306, 1311 (1995). Therefore, pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1,

1967), we reduce defendant's sentence for count I to 7 years in prison.

¶ 57                                    III. CONCLUSION

¶ 58            For the reasons stated, we affirm defendant's 22-year sentences for counts II and

III. We modify defendant's 14-year sentence for count I to 7 years in prison.

¶ 59            Affirmed as modified.