NOTICE

Decision filed 07/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180230-U

NO. 5-18-0230

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-1267 |
| | ) | |
| CEONTA M. JACKSON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Welch and Justice Overstreet concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because the trial judge did not abuse his discretion when he sentenced the defendant to a 22-year term of imprisonment that was well within the range of 6 to 30 years that the defendant faced after entering a plea of guilty to the charge of aggravated battery with a firearm, we affirm the defendant's conviction and sentence.

¶ 2   The defendant, Ceonta Jackson, appeals his 22-year sentence following his conviction for aggravated battery with a firearm. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4   The facts necessary to our disposition of this appeal follow. On September 22, 2016, the defendant was charged, by criminal complaint, with the following four felony offenses as a result of the defendant's alleged role in the July 26, 2016, unauthorized entry into the Cahokia home of victim Henry Wicker, and the shooting and wounding of Wicker by the defendant therein:

1

(1) home invasion with a firearm (Class X felony), (2) armed robbery involving the discharge of a firearm (Class X felony), (3) aggravated battery with a firearm (Class X felony), and (4) unlawful possession of a firearm with a prior conviction (Class 2 felony). Thereafter, the defendant was indicted by a grand jury on the same four charges.

¶ 5      On September 1, 2017, the defendant entered a plea of guilty to the charge of aggravated battery with a firearm (Class X felony) in exchange for the dismissal of the other three charges, and in exchange for the State's recommendation of, and agreement to concur with, a sentence of 15 years in the Illinois Department of Corrections, followed by 3 years of mandatory supervised release (MSR). The trial judge then admonished the defendant that the trial judge had not participated in the negotiations between the defendant and the State, and stated: "And you understand I'm not bound by the negotiations?" The defendant answered, "Yes, sir." The trial judge continued: "So I could sentence you—this is a Class X felony, and I'm about to tell you the range of punishment on all of these offenses. But the Class X felony, the range of punishment is up to 30 years. Do you understand that?" The defendant again answered, "Yes, sir." The trial judge then stated that he was not "guaranteeing" he would sentence the defendant to 15 years, and again asked the defendant if he understood that. The defendant stated that he did. The trial judge then asked the defendant if he still wished to plead guilty. The defendant stated that he did. The trial judge then discussed the range of penalties for the four offenses with which the defendant was charged, which included the possibility of life in prison if the defendant was convicted. The defendant agreed, on the record, that the "substantial" and "significant" amount of time in prison that he faced if convicted of some of the charges played a role in his agreement to plead guilty to aggravated battery with a firearm.

¶ 6      Thereafter, the following factual basis was presented in support of the defendant's guilty plea to the charge of aggravated battery with a firearm: that on July 26, 2016, the defendant and

his codefendants entered the home of the 86-year-old victim, robbed the victim, and that the defendant personally shot the victim in the leg. The factual basis also included the defendant's statement to police that he did not intend to shoot the victim, that he apologized to the victim for shooting him, and that he felt sorry for it. The trial judge then reiterated that he was "not promising *** to follow plea negotiations" and would set the matter for sentencing if the defendant persisted in his plea of guilty. Defense counsel asked for a moment to speak privately with the defendant, and did so. Thereafter, the defendant entered his plea of guilty.

¶ 7 On November 6, 2017, the defendant's sentencing hearing was held. The parties agreed that the presentence investigation report that was filed with the court was substantially accurate. The defendant offered, as evidence in mitigation, the testimony of his sister, Nakesha Jackson. Nakesha testified that she was presently employed as a security guard, that the defendant was a good older brother who helped Nakesha with her homework when they were growing up, and that the defendant began to have problems after their father passed away in December 2006. Nakesha testified that in the summer of 2016, the defendant indicated to her that he wanted to go back to school, and that Nakesha was surprised when the defendant was arrested for the present offense. Nakesha added, "I just want to say I know everybody looking at his case and feeling like he should be put away and stuff. But me personally, I feel like he my brother and he not a bad person. He just caught up in the wrong stuff." Although defense counsel declined to present additional witnesses, he asked the court to take judicial notice of "the number of family members. He's got a huge—a lot of family support here." The trial judge agreed to do so.

¶ 8 In argument, counsel for the State noted that although it did not appear that the defendant and his codefendants went to Wicker's home with the intention of shooting Wicker, nevertheless, "that's what ended up happening" during the course of the robbery. Counsel noted that Wicker had not recovered fully from the wound and had lost his ability to live independently as a result of

3

the shooting. He also noted the defendant's previous criminal history, which included a conviction for aggravated unlawful use of a weapon, and the age of the victim at the time of the crimes. Counsel asked for a sentence of 15 years in prison, to be served at 85%, followed by 3 years of MSR. The defendant's trial counsel contended that the defendant was young, a good candidate for rehabilitation, and had a good attitude and lots of family support. He described the defendant as having "a ton of remorse for what he did," and noted that the defendant had not violated the rules of the St. Clair County jail during his 13 months there. He emphasized that the defendant's criminal history was, until the present offense, nonviolent. He too asked for a sentence of 15 years, to be served at 85%.

¶ 9 In allocution, the defendant apologized to the community, the victim, the victim's family, and his own family. He noted that while in jail, he had been working toward getting his GED, and he asked for mercy from the court. Thereafter, the trial judge noted factors in aggravation and in mitigation, and stated, *inter alia*, the following:

> "[Y]ou and these others went into this man's private place and then beyond that you shot him. You didn't have to do that. It was bad enough. And you shot him. And we've got so many guns and you've had so many—You've had guns. This is the third time in your life that you've been caught with a gun that you aren't supposed to have. It started when you were 16. Then it happened again and you got convicted."

¶ 10 The trial judge thereafter stated, "I every day go along with plea negotiations that are presented by the agreement of the parties," but stated that "I cannot agree that 15 years is an appropriate sentence. Cannot agree. Don't agree." He stated that he did not believe the defendant was a bad person, but that the defendant had "done a very bad thing." He noted that the victim and the victim's family had been affected in "life-altering ways," and that the defendant's family had been negatively impacted by the defendant's choices as well. The trial judge added, "Based upon

4

everything I've said, the factors in aggravation and mitigation, I feel that the appropriate sentence in this case *** is a sentence of 22 years *** followed by three years of [MSR]."

¶ 11    Also on November 6, 2017, the trial judge filed a judgment order that conformed to his oral pronouncement of sentence. On November 28, 2017, the defendant, *pro se*, filed a motion to withdraw his guilty plea and vacate his sentence, as well as a motion to reduce his sentence. On December 4, 2017, the defendant, through his appointed counsel, filed a motion to withdraw his guilty plea and a motion to reconsider his sentence. On March 16, 2018, the defendant, through new counsel, filed an amended motion to reconsider his sentence.

¶ 12    On March 19, 2018, following a hearing on the defendant's amended motion, the trial judge denied the amended motion, stating, *inter alia*, "the most significant thing to me in imposing the 22 years was the nature and circumstances of the offense coupled with the fact that it was your third gun offense. The other two times you hadn't used the gun in the manner in which you used it here." He reiterated that he did not believe the defendant went to Wicker's home with the intention of shooting him, but added, "this kind of gun crime is senseless. It didn't need to happen. And I think the 22 years at 85 percent is the appropriate punishment." On April 11, 2018, the defendant's counsel initiated this timely appeal from the denial of counsel's amended motion to reconsider sentence.

¶ 13                                    II. ANALYSIS

¶ 14    The sole issue raised on appeal by the defendant is his contention that his sentence was excessive, and was an abuse of the trial judge's discretion, because of the defendant's "remorse, strong family support, education, and potential for rehabilitation." In particular, the defendant argues on appeal that the trial judge did not give sufficient weight to the factors in mitigation. He contends the trial judge did not place enough emphasis on (1) the defendant's "large family support network in place to help him after he completes his sentence," (2) the fact that the defendant's

5

prior crimes, although at times involving firearms, nevertheless were not violent offenses that led to injuries, (3) the defendant's expression of "sincere remorse" for the physical harm he caused to the victim, and (4) the defendant's attempts to better himself, through GED classes, anger management classes, and substance abuse counseling, while in prison. The defendant contends as well that his "age suggests he is a good candidate for rehabilitation, and that these events are not likely to recur."

¶ 15    It is well settled in Illinois that the trial judge who issues a sentence in a case "is in the best position to consider matters relating to sentencing determinations and is vested with wide discretion in making a reasoned judgment as to the penalty appropriate to the circumstances of each case." *People v. Brown*, 250 Ill. App. 3d 767, 774 (1993). Accordingly, this court has held that "[a] sentence within the statutory guidelines that is alleged to be excessive will not be disturbed on review unless it is manifestly disproportionate to the nature of the offense." *Id*. As the Supreme Court of Illinois has noted, a trial judge must base the judge's "sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). As the *Fern* court noted, a court of review "gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record" presented to it on review. *Id*. For that reason, a "reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *Id*. The keystone of sentencing, for constitutional purposes, is that the trial judge "must balance a defendant's rehabilitative potential with the seriousness of the offense." *People v. Harris*, 2015 IL App (4th) 140696, ¶ 54 (citing Ill. Const. 1970, art. I, § 11). However, a trial judge fashioning a

6

sentence "is not required to expressly outline every factor [the judge] considers for sentencing and we presume the [judge] considered all mitigating factors on the record in the absence of explicit evidence to the contrary." *Id*. ¶ 57.

¶ 16    In this case, we agree with the State that there is no explicit evidence that the trial judge failed to consider the mitigating factors listed by the defendant, or that he failed to accord each factor sufficient weight. Accordingly, we will presume that he properly considered each of the mitigating factors presented to him. We note as well that the defendant faced between 6 and 30 years in prison on the aggravated battery with a firearm charge, which means that his 22-year sentence was well within the statutory sentencing range. The trial judge stated that he did not believe the defendant was a bad person, but that the defendant had "done a very bad thing." As the State points out, the serious nature of the crime, the defendant's previous poor judgment with regard to firearms as reflected in his previous firearms offenses, and the age of, and injury to, the victim, were appropriate considerations for the trial judge at sentencing. Moreover, as the State also points out, by pleading guilty to an offense that had a maximum sentence of 30 years, the defendant avoided the possibility of substantial and significant prison time on the charges that were dismissed—including possibly life imprisonment—which was far beyond that to which he was sentenced in this case.

¶ 17    Ultimately, this case comes down to the trial judge's exercise of the considerable discretion afforded to him when fashioning a sentence. As explained above, this court "gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record" presented to it on review. *Fern*, 189 Ill. 2d at 53. Accordingly, we "proceed with great caution and must not substitute [our] judgment for that of the trial court merely because [we] would have weighed the factors differently." *Id*. Although

on appeal the defendant emphasizes the large family support network he purportedly has, trial counsel made no record of how many family members were in attendance at the defendant's sentencing hearing, so there is no way for this court to know how many members were present. The trial judge agreed to take judicial notice of the family members, and we presume he properly weighed their presence when considering the arguments about the defendant's support network. We note that the trial judge was present to observe the demeanor and credibility of those in attendance, as well as the demeanor and credibility of the defendant's sister, Nakesha, when she testified in mitigation. He was also in the best position to assess the sincerity of the defendant as the defendant expressed remorse during his statement in allocution, and had observed the defendant's demeanor and credibility throughout the various court proceedings in this case. The record before us on appeal gives us no reason to doubt that the trial judge considered, appropriately, all of the foregoing as he contemplated an appropriate sentence in this case: one that would balance the defendant's rehabilitative potential—in light of such additional factors as the defendant's age and his efforts to better himself while in prison—with the seriousness of the offense committed by the defendant, and the "life-altering" impact that offense had on the victim and the victim's family.

¶ 18    We conclude, after careful consideration, that the trial judge did not err when he rejected the 15-year sentence proposed to him by the parties and instead sentenced the defendant to a 22-year term of imprisonment. We therefore decline to disturb the defendant's sentence.

¶ 19                                    III. CONCLUSION

¶ 20    For the foregoing reasons, we affirm the defendant's conviction and sentence.


¶ 21    Affirmed.

8