**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180643-U

Order filed January 27, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-18-0643 |
| v. | ) | Circuit No. 16-CF-668 |
| WILLIAM G. RUNYON, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court did not ignore factors in mitigation or abuse its discretion when sentencing defendant. The punishment imposed by the trial court was not excessive.

¶ 2    Defendant, William G. Runyon, appeals his Peoria County sentences for aggravated battery and unlawful possession of a weapon by a felon (UPWF). Defendant argues the court abused its discretion by failing to apply certain mitigating factors, resulting in an excessively harsh sentence. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        The State charged defendant with first degree murder (720 ILCS 5/9-1(a)(2) (West 2016)), aggravated battery (*id.* § 12-3.05(e)(1)), and UPWF (*id.* § 24-1.1(a), (e)). Following a jury trial, defendant was found not guilty of first degree murder and guilty of aggravated battery and UPWF.

¶ 5        The State's evidence established that defendant's ex-girlfriend, Ashley Jones, was pregnant with defendant's child at the time of the offenses. During the early morning hours of September 3, 2016, defendant viewed a photograph on social media depicting Jones in the company of Morris Thomas. Defendant became jealous and angry. Defendant placed a loaded gun in his pocket and recruited his current girlfriend to drive him to Jones's residence. Upon arrival, defendant broke the door down and entered Jones's residence where he physically assaulted Jones. As his current girlfriend drove defendant away from Jones's residence following this confrontation, defendant's girlfriend received a threatening message from Thomas, a friend of Jones.

¶ 6        After learning about Thomas's threatening message to his current girlfriend, defendant instructed his current girlfriend to drive him back to Jones's residence. According to defendant, he expected that a fist fight would take place between the two men.

¶ 7        When defendant arrived at Jones's residence the second time, Jones was no longer inside her home but was present in the front yard. Defendant asked Jones where Thomas was, and when she did not respond, defendant pushed her down to the ground twice before Thomas appeared from behind the house. Thomas was accompanied by a friend, Carl Atkins.

¶ 8        Defendant testified that Thomas and Atkins seemed to be circling defendant, who was outnumbered. At some point in time, Thomas pulled a small gun out of his pocket and pointed it

2

at defendant. According to defendant, while fearing for his life, defendant responded by pulling his gun out of his pocket and shooting Thomas twice in the stomach, killing him.

¶ 9        After shooting Thomas, defendant shot Atkins in the neck. Defendant testified that he shot Atkins because he believed that Atkins may have been armed and posed a threat to defendant's life. Unlike Thomas, Atkins survived. At the time of these events, defendant was 22 years old and had a prior felony conviction.

¶ 10        As part of the sentencing phase, the court received a court-ordered presentence investigation, a mitigation report prepared by the defense, and testimony from the surviving victim who read his victim impact statement aloud to the court. The statement from the victim included the following language: "I now must live with a trachea that causes complications with my breathing, chronic pain, and random feelings of tightness in my neck making it hard to eat and drink at times." The surviving victim described emotional scars he continues to suffer from as a result of the shooting. Defendant also made a statement in allocution to the court that included an expression of remorse.

¶ 11        Before announcing the sentence, the court stated that it "considered the statutory factors in aggravation and mitigation, and it should be noted that just because one or more of those factors isn't specifically mentioned here today in court does not mean that they have not been considered." Speaking to the factors in mitigation, the court observed that defendant's imprisonment would cause hardship to his dependent, a young child. The court noted that it was tragic that defendant would be incarcerated during his child's early years. The court also remarked, "this case is notable for the family support that the Defendant has." Further, the court found defendant's remorse to be "remarkable" and sincere. In aggravation, the court found that a sentence of imprisonment was necessary to deter others from committing similar crimes.

¶ 12    In addition, the court discussed the fact that defendant had been violent toward Jones shortly before the shootings. The court also focused on defendant's prior felony conviction and history of disruptive behavior while in high school. The court found there were substantial grounds tending to excuse the murder charge, but not the aggravated battery charge. In doing so, the court focused on the jury's conclusion that the shootings were two separate and distinct acts, even though they were close in time. The court also placed weight on the fact that there was no evidence that Atkins was armed when defendant shot Atkins.

¶ 13    The court sentenced defendant to serve consecutive terms of 16 years' imprisonment for aggravated battery and 6 years' imprisonment for UPWF. The parties agreed that consecutive sentences were statutorily mandated pursuant to 730 ILCS 5/5-8-4(d)(1) (West, 2016).

¶ 14    Defendant appeals the sentence imposed.

¶ 15                                      II. ANALYSIS

¶ 16    Defendant argues the circuit court abused its discretion by finding there were no substantive grounds tending to excuse or justify defendant's conduct, a factor in mitigation pursuant to 730 ILCS 5/5-5-3.1(a)(4) (West 2016). Defendant also challenges the court's failure to recognize defendant acted in response to strong provocation, a factor in mitigation pursuant to 730 ILCS 5/5-5-3.1(a)(3) (West 2016). Finally, defendant contends that the sentence imposed by the court was manifestly disproportionate to the nature of his offenses. We review a circuit court's sentencing decision for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).

¶ 17    As a preliminary matter, the State argues that defendant forfeited these issues by failing to include them in his postsentencing motion. Our supreme court has held there is no forfeiture "where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal." *People v. Heider*, 231 Ill. 2d 1, 18 (2008). Defendant's motion to reconsider

sentence asserted that his sentence was excessive "[f]or all of the reasons previously presented and argued." This language incorporated defense counsel's sentencing argument that defendant "defended himself appropriately" because the shootings occurred in close succession without time for thought or reflection, and defendant reasonably believed he was acting in self-defense. Defendant's motion to reconsider sentence preserved these issues for our review because the circuit court considered the same or sufficiently similar claims.

¶ 18                                A. Mitigation Factors

¶ 19        On appeal, defendant argues the court erred by ignoring two factors in mitigation. First, defendant argues the court should have found there were substantial grounds tending to excuse or justify his decision to shoot Atkins, a mitigating consideration pursuant to 730 ILCS 5/5-5-3.1(a)(4) (West 2016). Defendant also argues that the trial court should have found strong provocation existed based on the jury's determination that defendant acted in self-defense when he shot and killed Thomas. 730 ILCS 5/5-5-3.1(a)(4) (West 2016).

¶ 20        In some cases, where the record is silent, a reviewing court may "presume the trial court considered all mitigating evidence before it, absent a contrary indication other than the sentence." *People v. Cagle*, 277 Ill. App. 3d 29, 32 (1996). Here, this presumption is not necessary since the courted stated that it had "considered the statutory factors in aggravation and mitigation, and it should be noted that just because one or more of those factors isn't specifically mentioned here today in court does not mean that they have not been considered."

¶ 21        The court found only one statutory factor in mitigation applied, namely, that defendant's imprisonment would create a hardship for defendant's dependent, a young child. 730 ILCS 5/5-5-3.1(a)(18) (West, 2016). While not codified as a factor in mitigation, the court gave consideration to defendant's expressed remorse, which the court found to be sincere and described as remarkable.

The court found it to be commendable that many family members and friends believed defendant's conduct was an aberration and unlikely to reoccur and remained supportive of defendant at the time of sentencing.

¶ 22    Specifically, defendant takes issue with the court's failure to make reference to "strong provocation" when explaining its reasoning for the sentence imposed. However, it is clear that the court first considered and then rejected strong provocation as a basis for a lesser term of imprisonment. Referring to the jury's verdict, the court concluded that defendant did not shoot Atkins as a result of strong provocation. In fact, the trial court relied heavily on the jury's determination that self-defense justified one shooting but did not excuse the aggravated battery against the other victim. The court's language reveals the court rejected the existence of substantial grounds justifying or excusing defendant's conduct that fell short of an affirmative defense. The trial court's finding that only one statutory factor in mitigation applied is not contrary to the facts of record and will not be disturbed on review.

¶ 23                              B. Proportionality of Sentence

¶ 24    Second, defendant argues his sentences are manifestly disproportionate to the nature of his offenses in light of his youth, remorse, community support, and rehabilitative potential. It is well settled that a "sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). The case law provides that the trial court has broad discretionary powers when imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Further, the trial court's judgment is afforded great deference on review because the trial court has had an opportunity to observe "the defendant and the proceedings, [and] has a far better opportunity to consider these factors than the reviewing court." *Fern*, 189 Ill. 2d at 53.

¶ 25 With respect to whether the sentence imposed by the trial court was excessive, the court properly considered the serious harm to the surviving victim and defendant's prior delinquency and criminal activity, both factors in aggravation. 730 ILCS 5/5-5-3.2(1), (3) (West 2016). The surviving victim, Atkins, testified during the trial, and the State introduced evidence concerning Atkins's extensive physical injuries resulting from the shooting. In this case, Atkins personally recited his victim impact statement into the record during the sentencing hearing. Atkins's statement described permanent physical injuries that resulted from being shot in the neck. He also described the haunting impact of his deceased friend's last words and increased anxiety due to the shooting that reduced his ongoing quality of life. The nature of the events and the harm to Atkins support the court's determination that a sentence of imprisonment was needed to deter others, a factor in aggravation. 730 ILCS 5/5-5-3.2(a)(7) (West 2016).

¶ 26 The court was also aware that defendant was 22 years of age at the time of this offense. The court noted, in spite of defendant's youth, defendant had a prior felony conviction related to the possession of a weapon and a history of inability to conform to the rules when in a high school setting. Further, the court remarked about the unprovoked violence defendant exhibited toward Jones on the morning of the shootings.

¶ 27 Defendant was facing the possibility of 6 to 30 years' imprisonment for aggravated battery (720 ILCS 5/12-3.05(e)(1), (h) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016)) and 3 to 14 years' imprisonment for UPWF (720 ILCS 5/24-1.1(a), (e) (West 2016)). Based on this record, we conclude the trial court's mid-range sentence for aggravated battery was well within the statutory limitations and was not excessive. Therefore, we hold that defendant's punishment was not manifestly disproportionate to the nature of the two convictions and affirm the trial court's judgment.

¶ 28                                III. CONCLUSION

¶ 29          The judgment of the circuit court of Peoria County is affirmed.

¶ 30          Affirmed.