NOTICE

Decision filed 02/09/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 180413-U

NO. 5-18-0413

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Hamilton County. |
| | ) | |
| v. | ) | No. 17-CF-47 |
| | ) | |
| ALISA M. McPHERSON, | ) | Honorable |
| | ) | Barry L. Vaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the defendant admittedly violated her probation for the second time, the circuit court did not err in finding a probation violation or sentencing her to a prison term one year above the minimum. The court also did not err in refusing to consider defendant's untimely postsentencing motion. As any argument to the contrary would lack merit, we grant the defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Alisa M. McPherson, appeals the circuit court's orders revoking her probation and sentencing her to four years' imprisonment. Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion. This court provided defendant with ample opportunity to file a response, but she has not done so. After reviewing the record and considering OSAD's motion

1

and the supporting memorandum, we agree that this appeal presents no issue of even arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged with one count of burglary and two counts of possession of a controlled substance. She pleaded guilty to burglary in exchange for 2½ years' probation and the State's agreement to dismiss the remaining charges. The State's factual basis showed that defendant was found behind the wheel of a truck while her fiancé, John Ferris, was removing items from a storage building and placing them in the truck. The circuit court accepted the plea and imposed the agreed-upon sentence.

¶ 5      On April 6, 2018, the State petitioned to revoke defendant's probation, alleging that she had not reported to her probation officer since December 2017, had been arrested for possession of a controlled substance, had consumed drugs and alcohol, and had failed to pay fines, complete drug counseling, or to appear for a court hearing. Defendant stipulated that she had violated probation.

¶ 6      Following a hearing, the court sentenced defendant to four years' probation. One condition of probation was that she spend the first 60 days in "home confinement" with Ronald Baker, her ex-father-in-law.

¶ 7      On July 11, 2018, the State petitioned to revoke defendant's second probation, alleging that she did not begin her home confinement with Baker as ordered. At a hearing on the petition, Baker testified that he picked defendant up from jail on July 9, 2018. He drove her to a gas station, where he bought her a drink and cigarettes, then to the welfare office so she could check on her benefits. Then, they drove to Walmart, where defendant demanded that Baker buy her clothes. When he refused, she asked him to take her to her house or to her grandmother's house.

¶ 8      Baker refused these requests.   Defendant wanted a pizza, so they drove to Domino's to pick it up.  When they arrived at Domino's, defendant got out to smoke a cigarette while Baker went inside for the pizza.  When he returned, defendant was gone.  He waited for 30 minutes, but she did not return.

¶ 9      Baker drove home and called defendant's probation officer, Denise Givens, to let her know that defendant was missing.  Givens asked Baker to go back to Domino's to see if defendant had returned.  Baker went back to the restaurant, but defendant was not there.  Later that night, he called Domino's and was told defendant had never returned to the restaurant.

¶ 10     Baker explained that staying at his house was defendant's idea.  He said that she "brought this up whenever she was in jail."  He agreed that defendant could be placed under "house arrest" at his home because this was something she wanted to do, although she had never asked for his permission to do so.

¶ 11     Givens testified that, immediately after the prior hearing, she explained to defendant the conditions of her probation.  Defendant understood that she had to reside with Baker for 60 days.  A few hours later, Baker called to say that defendant had run away.  Later, she received a voicemail message from defendant who said that she had gotten into an argument with Baker and left.

¶ 12     Givens spoke to defendant the following day and told her to go back to Baker's house.  She explained that the court had ordered her to reside with Baker and only the court could change the terms of probation.  Givens told defendant to report to her office the following day, July 11.

¶ 13     Defendant did not report to Givens on July 11.  On July 12, Givens received a call from Carissa Pyles.  Pyles said that she resided at Wildflower house, a "sober living" facility.  Pyles said that defendant was living there, too, and wanted to talk to Givens.  Givens said that defendant

3

had to return to Baker's residence, and arranged for defendant to report to her on July 13. When defendant reported on July 13, she was arrested.

¶ 14    Defendant testified that Baker was being "verbally abusive." Baker refused to take her home so that she could get some clothes. On the way to Walmart, they passed her grandmother's house. Defendant asked him to stop so she could get money from her grandmother to buy clothes. He again refused, saying, "We are not dealing with your family. They are not your family no more." When the subject of her children came up, Baker said, "you need to just not worry about your kids right now," which upset defendant.

¶ 15    Baker was smoking marijuana and offered her some. Baker ordered a pizza with meat from Domino's. She said she did not want a pizza with meat because she was a vegetarian. Baker replied, "you can just pick it off." Baker got angry at Walmart, and stormed out, leaving her with a shopping cart full of groceries. She described Baker as "being really mean." She "ran" to a friend's house after they stopped at Domino's. There, she met Pyles, who took her home to shower and get some clothes.

¶ 16    Defendant left a voicemail message for Givens, then spent the night at the friend's house. She spent the next night with another friend. The next day, she went to the Wildflower house, where she stayed until July 13.

¶ 17    Defendant said that she called Givens on July 10 and 11 and was told that she needed to return to Baker's residence. Defendant was "scared" because Baker was "not just verbally but mentally and emotionally" abusive. Defendant testified that she did not want to stay with Baker because there were "too many triggers" at his house.

¶ 18    In rebuttal, Baker denied that he was abusive. He denied smoking marijuana. He did not take defendant to see her family because "they are always into some kind of drugs."

4

¶ 19    The court found that the State had proved that defendant violated her probation. The court noted that during the sentencing hearing defendant never expressed any reservations about living with Baker and, "frankly, that was one of the reasons the Court opted for another chance at probation instead of accepting the State's recommendation of going to DOC." The court revoked defendant's probation and scheduled a sentencing hearing.

¶ 20    The presentence report showed that defendant had a burglary conviction from 2004, when she was 17 years old. Following the hearing, the court conceded that it had likely "set [defendant] up to fail" when it ordered her to live with Baker, but that this appeared to be the only alternative to prison. Noting the prior conviction, the court sentenced defendant to four years' imprisonment, one year above the minimum. Defendant filed a timely notice of appeal.

¶ 21    On the thirty-first day after sentencing, defendant mailed to the court a motion to reconsider the sentence. She contended that her "ONLY motivation to change living arrangements was because of the open drug use and her desire to stay clean and sober and not violate any probational rules." The record does not show that the court ever took any action on defendant's motion.

¶ 22                                    ANALYSIS

¶ 23    OSAD contends that there is no good-faith argument that the circuit court erred by revoking defendant's probation and sentencing her to prison. We agree.

¶ 24    OSAD initially maintains that the court did not err in finding that defendant violated her probation. OSAD contends that the State followed appropriate procedures by filing a revocation petition alleging the specific acts that violated probation and providing her with adequate notice.

¶ 25    Further, the State proved that defendant violated her probation. In a revocation proceeding, the State has the burden to prove by a preponderance of the evidence that a defendant violated her probation. 730 ILCS 5/5-6-4.1(c) (West 2018); *People v. Crowell*, 53 Ill. 2d 447, 451 (1973). In

5

reviewing whether the evidence is sufficient to support a revocation, we decide "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty" by a preponderance of the evidence. *People v. Reher*, 361 Ill. App. 3d 697, 700 (2005). It is the responsibility of the fact finder to judge the weight of the evidence, assess the credibility of the witnesses, and draw any reasonable inferences. *People v. Ramos*, 316 Ill. App. 3d 18, 22 (2000).

¶ 26    Here, it was not seriously disputed that defendant failed to comply with the conditions of her probation. One such condition was that she reside with Baker for 60 days. However, before even arriving at Baker's house, defendant absconded and made living arrangements of her own choosing. She ignored Givens's repeated directives to return to Baker's house and missed an appointment with Givens before finally appearing three days later.

¶ 27    Defense counsel acknowledged in closing that defendant "didn't strictly comply with the Court's order." In her own testimony, defendant admitted that she did not reside with Baker as the court ordered, but attempted to rationalize her conduct by blaming Baker. However, as the court noted, at the sentencing hearing, defendant never expressed any reservations about living with Baker. And Baker testified without contradiction that the idea of living with him as an alternative to going to prison originated with defendant. Defendant did not present any evidence that Baker posed a physical danger to her such that she had no choice but to run away from him and seek alternative living arrangements without first petitioning the court.

¶ 28    OSAD further contends that no reasonably meritorious argument exists that the circuit court abused its discretion in sentencing. After revoking her probation, the court could sentence defendant to any sentence appropriate for the original offense. *People v. Rollins*, 166 Ill. App. 3d 843, 844-45 (1988). A circuit court had great discretion in sentencing a defendant, basing its

decision on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). We presumptively defer to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the "cold" record. *Id.* We will not disturb a sentence within the statutory range unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 29 Here, after two failed attempts at probation, it could not be seriously argued that the court abused its discretion by sentencing defendant to prison. Moreover, the four-year sentence was only one year above the minimum for a Class 2 felony such as burglary. See 720 ILCS 5/19-1(a) (West 2016); 730 ILCS 5/5-4.5-35(a) (West 2016). Given that defendant had previously been convicted of the same offense, a sentence above the minimum was justified on that basis alone.

¶ 30 Finally, OSAD suggests that there is no viable argument that the court erred by failing to rule on defendant's untimely motion to reconsider the sentence. A court's authority to modify a sentence terminates after 30 days. *People v. Flowers*, 208 Ill. 2d 291, 303 (2003) (citing 730 ILCS 5/5-8-1(c) (West 2002)). Here, the court properly advised defendant that she had 30 days to file a motion to reconsider the sentence, but her motion was mailed on the thirty-first day. Thus, the court lacked jurisdiction to consider it. *Id.*; *People v. Bonds*, 317 Ill. App. 3d 411, 416-17 (2000).

¶ 31                                        CONCLUSION

¶ 32 As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 33 Motion granted; judgment affirmed.