NOTICE

Decision filed 08/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230245-U

NO. 5-23-0245

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 09-CF-632 |
| | ) | |
| LEMUEL HOUSTON, | ) | Honorable |
| | ) | Jeffrey K. Watson, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Vaughan and Justice Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The trial court did not abuse its discretion in sentencing the defendant to 53 years' imprisonment.

¶ 2     The defendant, Lemuel Houston, appeals from an order of the trial court denying his third amended motion to reconsider his sentence. This is the defendant's fifth appeal stemming from his conviction for the 2009 murder of Greg Jonas. The defendant entered a nonnegotiated plea of guilty but mentally ill to a single count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)). Defense counsel stipulated that the State could prove the aggravating factor set forth in section 9-l(b)(1) of the Criminal Code of 1961 (*id.* § 9-l(b)(1)), specifically that the victim was a peace officer in the course of performing his official duties when he was killed. The State stipulated that section 104-26 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-26 (West 2008)),

1

disposition of defendants suffering disabilities, would apply to defendant's sentencing. The trial court sentenced the defendant to 53 years' imprisonment followed by a 3-year term of mandatory supervised release. The trial court recommended placement where the defendant could obtain mental health treatment. The defendant appealed. For the following reasons, we affirm.

¶ 3                                                    I. Background

¶ 4     We include only those facts necessary for the resolution of the issue on appeal. On June 4, 2009, the defendant, who was 22 years old at the time, was charged with the first degree murder of Greg Jonas in violation of section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2008)). The State filed a notice that it did not intend to seek the death penalty; instead, the State intended to seek an enhanced sentence of natural life imprisonment pursuant to section 5-8-1(a)(1)(b) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(b) (West 2008)) because Jonas was a peace officer killed in the line of duty.

¶ 5     On November 5, 2009, the parties filed a written stipulation indicating that Dr. Daniel Cuneo, a forensic psychologist, was appointed by the trial court at the request of the defense to evaluate the defendant's fitness to stand trial. The stipulation also indicated that in his report dated October 1, 2009, Dr. Cuneo diagnosed the defendant with (1) alcohol dependence in a controlled environment, polysubstance dependence in a controlled environment, and (2) mild mental retardation (50-70 IQ). Dr. Cuneo would testify that the defendant's mental retardation manifested itself by the age of 18 and, further, that his mental illness substantially impaired his ability to understand the nature and purpose of the proceedings against him and his ability to assist in his own defense. Dr. Cuneo also would testify that the defendant was unfit to stand trial. However, Dr. Cuneo opined that if the defendant was provided with a course of inpatient rehabilitative

2

treatment and stabilized on psychotropic medication, there was a substantial probability that he would be able to attain fitness within the course of one year.

¶ 6    The parties also stipulated that Dr. John Rabun, a forensic psychiatrist, was appointed by the trial court at the request of the State to evaluate the defendant's fitness to stand trial. Dr. Rabun would testify that based on his evaluation of the defendant, he concurred with the diagnosis of Dr. Cuneo, specifically that the defendant suffered from mild mental retardation that manifested itself by the age of 18. Dr. Rabun estimated the defendant's IQ to be between 60-70. Dr. Rabun opined with reasonable medical certainty that the defendant was unfit to stand trial at that time, but that the defendant would likely regain his fitness to stand trial within one year. On October 12, 2010, following a hearing, the defendant was found fit to stand trial.

¶ 7    On September 8, 2011, the defendant filed a motion to suppress his statements to the police alleging, *inter alia*, he lacked the capacity to knowingly and intelligently waive his rights. Quoting from Dr. Cuneo's report, defense counsel argued that the defendant was "moderately mentally retarded"; "unable to give the meaning of such simple words as 'repair' and 'yesterday' "; was "in the bottom 0.4% of the nation intellectually"; functioned "roughly at the cognitive level of an eight-year-old"; could not "understand what happens in a court room" and "could not grasp that a public defender was there to help him"; could not explain the role of the judge; was unable to communicate with his attorney "in any meaningful way, much less assist in his own defense"; and "could not understand the concepts of plea bargaining or probation." Defense counsel also noted that Dr. Rabun had concurred with Dr. Cuneo's findings.

¶ 8    A hearing was held over the period of two days on the defendant's motion to suppress. Dr. Rabun, who previously had opined on the defendant's fitness to stand trial, was called as a witness by the State. Dr. Rabun was asked to opine on whether the defendant had the capacity to

3

knowingly, intelligently, and voluntarily waive his *Miranda* rights. Dr. Rabun testified that on November 13, 2009, Dr. Rabun interviewed the defendant. Additionally, he reviewed his original report and the records he relied on for that report; police reports; progress reports from Alton Mental Health Center; Dr. Cuneo's three reports; a videotaped statement the defendant gave in an unrelated case in January 2008; a videotaped statement by the defendant from 2009 in the instant case; and an audio CD from the instant case. Based on his interview with the defendant, and his review of records and recorded statements, Dr. Rabun opined that even given the defendant's mental defects, the defendant had the capacity to knowingly, intelligently, and voluntarily waive his *Miranda* rights on the day in question. In its written order, the trial court acknowledged that the defendant had "a limited intellectual capacity" and some difficulty reading. Nevertheless, the trial court denied the defendant's motion to suppress his statements.

¶ 9 On July 10, 2012, defense counsel filed a motion for adjudication that the defendant qualified for special provisions under section 104-22 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-22 (West 2012)), which was granted by the trial court. On July 13, 2012, the parties informed the trial court that the defendant intended to enter an open plea of guilty but mentally ill to the charge of first degree murder. The defendant was present with defense counsel and his mother. At the start of the hearing, the State noted it was not seeking the death penalty; rather, the State was seeking an enhanced sentence of natural life because Lieutenant Jonas was a peace officer killed while performing his official duties. Defense counsel stipulated that the State could satisfy its burden of proof on that issue.

¶ 10 The trial court admonished the defendant. As part of the admonishments, the trial court informed the defendant that the State was arguing that he should be imprisoned for the remainder of his life, while defense counsel was arguing that the sentence could be a lesser amount of time

4

or even probation. The defendant was also admonished by the trial court that if he was entitled to a lesser sentence than life, he would be required to serve a period of mandatory supervised release at the end of his time in prison.

¶ 11    The State provided the factual basis. If the case were called to trial, the evidence would show that on June 2, 2009, Greg Jonas was a lieutenant for the Centreville Police Department who was on duty in his official capacity when he responded to a call. Officer Dave Lauere would testify that he heard on the radio that an officer was down at Pop's Liquor Store. When Officer Lauere responded to the scene, he saw Lieutenant Jonas had been shot and was lying on his back outside his patrol car. Officer Lauere radioed that an officer needed help. Lieutenant Jonas was taken by ambulance to the hospital.

¶ 12    The major case squad was activated, and they conducted numerous witness interviews. Witness Larry Parker would testify that Lieutenant Jonas pulled up in his squad car and made contact with four individuals. Parker knew one of the four individuals named Romerio, who was on a bike. Parker heard Lieutenant Jonas tell them to go where they were supposed to be, and he saw Lieutenant Jonas speaking to someone in dreadlocks. A scuffle began between Lieutenant Jonas and the individual with dreadlocks. Parker heard three to five gunshots, and the four individuals fled. Parker approached Lieutenant Jonas and used the police radio to call for help.

¶ 13    Romerio Ellington would testify that he rode his bike to the projects at about 1 a.m. where he met his cousin, Tarion Wilbourn, and Tarion's friend. The defendant arrived and hung out with them. Ellington would testify that Lieutenant Jonas asked the defendant to come over towards him and raise his shirt. After the defendant raised his shirt, Lieutenant Jonas asked the defendant to put his water bottle down. The defendant then pulled out a gun and shot Lieutenant Jonas in the face

5

five or six times. Ellington was shown a photo line-up and at first declined, but he later identified the defendant as the person who shot Lieutenant Jonas in the face.

¶ 14    Tarion Wilbourn would testify he first told the police that he did not have any information. However, at a second interview, Wilbourn indicated that the defendant was the shooter. If called, Wilbourn would testify that he was on one side of the road with an individual named J.B., and the defendant and an individual named Muro were on the other side of the road. Wilbourn would testify he saw Lieutenant Jonas arrive in his squad car and then the defendant yelled something to Lieutenant Jonas which caused Lieutenant Jonas to get out of his squad car. Wilbourn saw the defendant lift his shirt up and show his waist to show he did not have a gun. The defendant then pulled out a gun from the right side of his body and shot Lieutenant Jonas. Wilbourn and J.B. ran away, and Wilbourn heard shots as he departed. Wilbourn did not know where the defendant and Muro went. When shown a photo lineup, Wilbourn identified the defendant as the shooter.

¶ 15    The State would present evidence that the defendant was taken into custody and read his *Miranda* rights. The defendant gave a statement to the police admitting that he shot Lieutenant Jonas. The defendant stated Lieutenant Jonas approached him. The defendant had a .38 revolver in his pocket which he pointed at Lieutenant Jonas and shot a few times. The defendant stated that he ran away, and he later got rid of the gun.

¶ 16    Dr. Raj Nanduri would testify that she was an expert in pathology and that Lieutenant Jonas died from four gunshot wounds to the head and neck. Dr. Nanduri would classify the death as a homicide.

¶ 17    The defendant agreed to the statement of facts and entered his plea of guilty but mentally ill. The State referenced the stipulation of the parties wherein Dr. Cuneo and Dr. Rabun opined that the defendant was mildly mentally retarded, which the State submitted to the trial court

6

qualified as a mental illness. The trial court accepted the defendant's guilty plea and set the matter for a sentencing hearing.

¶ 18    On November 13, 2012, the defendant's sentencing hearing was held before the Honorable John Baricevic. The parties indicated they disagreed as to the appropriate sentencing range and argued the applicability of *People v. Watters*, 231 Ill. App. 3d 370 (1992) (trial court has discretion to consider alternate sentence of probation for intellectually disabled defendants). The State argued that if the trial court found that *Watters* applied, the minimum sentence could be probation; however, if the trial court did not find that *Watters* applied or, alternatively, that *Watters* did apply but probation was not appropriate, the sentence could be from 20 to 60 years or discretionary natural life. The defendant argued that if the trial court found that *Watters* applied, the trial court could impose a sentence of less than 20 years but greater than probation. The parties requested the trial court to readmonish the defendant and ask him whether he wanted to persist in his plea of guilty but mentally ill in light of the sentencing range.

¶ 19    After reading the case law and hearing arguments from the parties, the trial court found that *Watters* did apply. The trial court instructed the defendant as follows:

> "THE COURT: Here's what I believe you are facing today.
>
> You could get probation with some type of mental health treatment.
>
> If I believed that that's not appropriate, I could sentence you to the Department of Corrections for a period of time between twenty and sixty years, a determinate period. That would mean a set number of years. I could sentence you to twenty years, to thirty-six years, to forty-eight years, to sixty years, what—or any other number between twenty and sixty. If I—And if I picked that option, you will stay in the Department of Corrections for every day of that sentence, minus whatever time you've done in the County Jail.

7

The third option is, depending on if the State presents any evidence, there's a possibility, if I find in their favor, that I could sentence you to natural life, which would mean you would never get out of prison unless there was a governor's pardon. It would take special action for the governor—from the governor for you ever to get out of prison.

\*\*\*

THE COURT: Do you understand that it is my decision and mine alone as to which of those options—

THE DEFENDANT: Yes, sir.

THE COURT:—are appropriate? And based on that, do you still wish to persist in your plea of guilty to the charge?

THE DEFENDANT: Yes, sir."

¶ 20    The State argued factors in aggravation, insisted that probation would deprecate the seriousness of the offense, and requested the trial court to sentence the defendant to natural life in prison rather than probation or mental health treatment. Defense counsel argued factors in mitigation, including the defendant's intellectual disability. He further argued the defendant had accepted responsibility when he admitted shooting Lieutenant Jonas; the defendant's significant limitations of adaptive functioning; the fact that the defendant had never been employed; and the defendant's diagnosis of mild mental retardation. Defense counsel did not request a specific sentence but submitted that the sentence should be tailored to the defendant's individual circumstances.

¶ 21    Prior to announcing sentence, the trial court noted it had reviewed the presentence investigation report and had considered the factors in aggravation and mitigation, comments of

counsel, exhibits, and testimony. The trial court agreed with defense counsel that under Illinois law, a sentence was to be fashioned pursuant to the particular facts of the case and of the individual. The trial court stated:

> "THE COURT: I also find that in that significant response to the psychiatric and educational factors of your client that you refer to, that those same doctors were treatment providers, they were not all medical doctors. But those treatment providers gave the opinion that Mr. Houston knew right from wrong, sanity is not an issue. And that becomes an important factor for me. Mr. Houston chose to shoot the officer in the face and the neck.
>
> \*\*\*
>
> But it seems to me that if you're shooting in the head and the face, that you have only one reason for why you pulled the trigger and that was to kill the individual. And if you knew right from wrong, Mr. Houston, you knew that was wrong.
>
> And so the argument that the State makes that you're a danger to society, I find to be accurate."

¶ 22    The trial court then noted as a mitigating factor that the defendant was functioning at a level below his biological age. The trial court found that the defendant's diminished capacity negated a natural life sentence and, instead, sentenced the defendant to 53 years' imprisonment followed by 3 years of mandatory supervised release. The trial court recommended that the defendant be provided with mental health treatment. The defendant appealed.

¶ 23    The defendant's first appeal resulted in remand due to trial counsel's defective Rule 604(d) certificate and the trial court's erroneous Rule 605 admonishments. *People v. Houston*, No. 5-13-0162 (2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, Judge Baricevic again denied the defendant's motion to withdraw his guilty plea. The defendant's

second appeal once again resulted in remand due to trial counsel's defective Rule 604(d) certificate and the trial court's erroneous Rule 605(b) admonishments. *People v. Houston*, No. 5-15-0353 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)). The defendant's third appeal resulted in remand once again for appropriate Rule 605(b) admonishments and filing of a new Rule 604(d) certificate. *People v. Houston*, No. 5-17-0215 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On October 26, 2020, the defendant was heard on his amended motion to withdraw his guilty plea or, alternatively, motion to reconsider his sentence in front of the Honorable John O'Gara. Judge O'Gara denied the defendant's motion, and the defendant filed his fourth appeal, arguing that prior to becoming a judge, O'Gara had been appointed to represent him in the instant matter. On October 7, 2021, this court granted the defendant's unopposed motion for summary relief because Judge O'Gara had served as defense counsel and judge in the same matter. *People v. Houston*, No. 5-21-0134 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Once again, the cause was remanded for further proceedings.

¶ 24    On March 1, 2023, the defendant was heard on his third amended motion to withdraw his guilty plea, or in the alternative, to reconsider his sentence. The defendant argued, *inter alia*, that he did not enter his guilty plea knowingly and voluntarily because his mental illness and mental capacity prevented him from understanding the full nature of the proceedings. With regards to his sentence, the defendant argued that his 53-year sentence was excessive because he was found to have a mental illness and was functioning at the level of an eight- or nine-year-old when he committed the offense at age 22. The trial court took the matter under advisement.

¶ 25    On April 6, 2023, the defendant's third amended motion to withdraw his guilty plea or, alternatively, to reconsider his sentence, was denied. This appeal follows.

¶ 26                                    II. Analysis

¶ 27     On appeal, the defendant argues that the 53-year sentence imposed upon him is excessive where he is intellectually disabled with the mental capacity of an eight-year-old; has some ability to learn if given the chance; took responsibility for his crime when he entered an open guilty plea; and previously had a minimal criminal history. The defendant seeks to have his sentence reduced; in the alternative, the defendant requests this court to reverse and remand for resentencing.

¶ 28     "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). Because the trial court had the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age, a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *Id.* at 213. " 'A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the "cold" record.' " *Id.* at 212-13 (quoting *People v. Fern*, 189 Ill. 2d 48, 53 (1999)). If a sentence is within statutory limits, a reviewing court will not reverse it absent an abuse of discretion. *People v. Cabrera*, 116 Ill. 2d 474, 494 (1987). A trial court abuses its discretion when the penalty imposed is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 29     At the outset, we decline the defendant's invitation to substitute this court's judgment for that of the trial court where he argues that the trial court failed to give sufficient weight to either

11

his intellectual disability or the fact that he took responsibility for his crime by entering an open guilty plea. We will not reweigh the factors considered by the trial court.

¶ 30 The defendant next argues that the trial court failed to consider how his ability to learn and grow might contribute to his rehabilitation. The Illinois Constitution requires courts to determine penalties " 'both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *People v. Bien*, 277 Ill. App. 3d 744, 755 (1996) (quoting Ill. Const. 1970, art. I, § 11). "Not *all* criminal defendants must be given an opportunity for rehabilitation or else life imprisonment would not be constitutionally permissible." (Emphasis in original.) *Id.* at 756. The trial court is vested with the responsibility for balancing between rendering justice and rehabilitating the defendant. *Id.* A defendant's rehabilitative potential is not entitled to greater weight by the trial court than the seriousness of the offense. *Id.* "The goal of rehabilitation should not be elevated over the goal of justice." *Id.*

¶ 31 There is no question that the defendant committed a serious offense when he shot Lieutenant Jonas in the head and neck resulting in his death. Under the facts presented, we do not find that the trial court was required to impose a sentence that would serve to restore the defendant to useful citizenship.

¶ 32 The defendant contends that the trial court failed to consider that his previous criminal history was minimal. Contrary to his contention, evidence of the defendant's relatively minimal criminal history was presented prior to sentencing in the presentence investigation report, which the trial court stated it had considered. There is a presumption that the sentencing court considered mitigating evidence before it. See *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). However, the "existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed." *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001).

12

¶ 33    Here, the trial court found that the defendant was eligible for a maximum sentence of up to 60 years. Although the State was seeking an enhanced sentence of natural life imprisonment, the trial court found that the defendant's diminished capacity was a mitigating factor which negated a natural life sentence. However, the trial court also considered factors in aggravation, most notably that Lieutenant Jonas was a peace officer in the line of duty when he was shot and killed by the defendant. Ultimately, the trial court sentenced the defendant to 53 years' imprisonment and recommended that the defendant be provided with mental health treatment. After reviewing the record, we cannot say the trial court abused its discretion.

¶ 34                              III. Conclusion

¶ 35    For the foregoing reasons, we affirm the trial court's judgment and sentence.

¶ 36    Affirmed.